**WINTHROP CHEMICAL CO., Inc., v. AMERICAN PHARMACEUTICAL CO., Inc.**

No. 122.

Circuit Court of Appeals, Second Circuit.

Feb. 7, 1938.

Schwartz & Frohlich, of New York City (Louis D. Frohlich, of New York City, of counsel), for appellant.

Rogers, Ramsay & Hoge, of New York City (Edward S. Rogers and Clifton Cooper, both of New York City, of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

This appeal from a decree in equity raises issues dependent upon their solution largely upon whether the findings of fact made by the trial court are adequately supported by the evidence.

Having considered the evidence at length, we agree with the court below that the following facts were proved: On or about January 2, 1935, the plaintiff, a New York corporation, acquired the business and assets of H. A. Metz Laboratories, Inc., another New York corporation, including the cause of action upon which this suit was brought. The defendant is a New Jersey corporation wholly owned by one Philip Kachurin, who controls its acts absolutely and who uses it to compete unfairly with the plaintiff. Jurisdiction is based on diversity of citizenship, and the amount in controversy exceeds that requisite for jurisdiction in such an action.

The plaintiff's predecessors were for many years before this suit was brought, and the plaintiff was at that time and still is, engaged in the business of manufacturing and selling drugs, chemicals, and pharmaceutical products, including a drug known by the generic name of amidopyrine, which is a remedy for headaches and other ailments. For over thirty years they have sold this drug in tablet form under the trade-mark "Pyramidon" written in script letters on a pink label placed on tubes and bottles used as containers. During that time over twelve million packages have been sold and large amounts of money spent in advertising under the above-mentioned label, all of which has enabled the plaintiff to build up and enjoy a valuable good will. It has many competitors selling amidopyrine, most of whom provide packages and labels for their product wholly unlike those of the plaintiff.

In 1928 Philip Kachurin who was then, as now, a competitor, sold the drug put up in containers resembling those of the plaintiff with a pink label bearing the word "Pyramidon." H. A. Metz Laboratories, Inc., sued him, alleging unfair competition and the infringement of its trade-mark "Pyramidon." After trial in 1930, but before the suit was decided, the parties entered into a settlement agreement providing for a payment to Kachurin by the plaintiff which was duly made and for a decree enjoining him from infringing the trade-mark "Pyramidon" and from using a package like that now in use by this plaintiff "or any other package which by colorable imitation or otherwise is calculated to induce the belief that any product other than the plaintiff's is the plaintiff's product." By stipulation both in the former case and in the present action the just mentioned decree was made binding on the present defendant as well as on Kachurin.

The defendant manufactures about three hundred different kinds of drugs and pharmaceutical products which it sells in packages having in general a brown and yellow color scheme. After the settlement of the former suit, Kachurin and the de-

fendant no longer used the name "Pyramidon" on their packages of amidopyrine but adopted a label of the same pink color as that of the plaintiff with the name "Amidopyrine" in script form like the trade-mark "Pyramidon" on plaintiff's label, placing this label on a tube of the same size and shape as the plaintiff's tube, and making the container and label as nearly identical with the plaintiff's as they could without employing plaintiff's trade-mark "Pyramidon." This was done deliberately for the purpose of enabling dealers who would do so to palm off the defendant's product for the plaintiff's, and such palming off was proved.

The plaintiff knew of the use of this deceptive label by the defendant in the latter part of 1931 and protested against its use promptly. It did not bring this suit until April, 1934; being engaged in the prosecution of other similar actions meanwhile. The plaintiff never consented to the defendant's use of the deceptive label, and there is no good reason for believing that the defendant ever thought it acquiesced in its use. In agreement with the trial court, we find that the plaintiff brought the present suit with reasonable promptness after the discovery of the defendant's imitation of its label.

The appellant now argues that, as federal jurisdiction in the former suit rested wholly upon trade-mark infringement, the consent decree covering unfair competition regardless of the infringement was void for want of jurisdiction and so not binding in this action. The basis of that argument is rather curious. It rests in part upon the firm ground that jurisdiction of the unfair competition cause of action could not be conferred by consent alone and in part upon the unsound notion that as of the time that suit was brought the cause of action for unfair competition between residents of the same state was not within federal jurisdiction, even if joined with an action for trade-mark infringement made out by the same acts. After Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 was decided in 1933, we think all doubts on that score were laid. See Warner Publication, Inc., v. Popular Publications, 2 Cir., 87 F.2d 913. The question here raised going only to the validity of the former decree and the claimed infirmity being confined to an alleged want of jurisdiction which later decisions have shown would not have been tenable even if made in that suit, we hold on the above authorities that the court had jurisdiction to issue the challenged decree. No contract rights dependent upon an established construction of a statute were involved as they were in Douglass v. County of Pike, 101 U.S. 677, 25 L.Ed. 968 and so we cannot regard that decision applicable.

The other contentions of the appellant in so far as legal issues are raised have no support in the facts found as above stated. Without a finding, made or required by the proof, of laches in the bringing of the suit, there is no defense to that part of the decree which provides for an accounting. Nor was the unfair competition of the defendant proved merely by its use of pink as a color. That was but one of the deceptive elements which went to make out the wrongful practices enjoined.

Decree affirmed.