ZALKIND v. SCHEINMAN et al. (SCHEINMAN et al., Third Party Plaintiffs; GUIDE SYSTEM & SUPPLY CO., Inc., Third Party Defendant).

No. 94.

Circuit Court of Appeals, Second Circuit.

Dec. 10, 1943.

Samuel Ostrolenk, of New York City (Morris Hirsch and Sidney G. Faber, both of New York City, of counsel), for appellant.

Lackenbach & Hirschman, of New York City (Joseph Hirschman and Armand E. Lackenbach, both of New York City, of counsel), for appellees.

Before L. HAND, CLARK, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

1. Judge Bondy's order was interlocutory and not appealable since it permitted plaintiff to amend. By amending, plaintiff did not lose his right to an appeal (if such right otherwise exists) from Judge Caffey's subsequent order, of March 12, 1943, striking out a portion of the amended complaint. In considering that latter order, we shall deal with the amended complaint just as if it had been the original complaint. With respect to the appeal from that order, we face two questions which (as will appear from our discussion) are intertwined: a question of the jurisdiction of the federal courts with respect to such a claim, and a question as to whether the order striking out that portion of the amended complaint is final and appealable until there has been a final judgment on the remaining claim.

2. The amended complaint alleges infringement of plaintiff's patents. It also (in that portion thereof which Judge Caffey's order struck out) sets forth a second claim, viz., one for damages due to defendants' alleged misconduct in the Patent Office before the issuance of the patents. Plaintiff suggests two theories as to the nature of this latter claim: The first theory is that the second claim is for a common law tort; the second theory is that this claim is based upon the provisions of the Patent Law. We shall consider these theories in turn.

The claim, on the first theory, is nonfederal in character.[2] Federal jurisdiction is therefore wanting, since there is no diversity of citizenship, unless this case comes within the doctrine of Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148. An important source of confusion in the discussion of that doctrine stems from this paradoxical aspect of the rule as to "final," appealable orders:[3] Theoretically, under the statutes governing appeals, we lack appellate jurisdiction to decide whether the trial court's order correctly or erroneously denied federal jurisdiction of the nonfederal claim unless and until we first decide that the trial court's order was "final" and therefore appealable. However, if the two claims are sufficiently distinct to oust federal jurisdiction of the nonfederal claim, then they are also so distinct as to render final and appealable an order of the trial court dismissing the nonfederal claim while the other claim still remains on the trial calendar.[3a] It is usually convenient, therefore, to telescope the two

[2] We assume, without deciding, that the alleged facts show an actionable wrong at common law. But there is no federal jurisdiction merely because that wrong grows out of interference with proceedings before a federal agency, absent a statute conferring such jurisdiction; and there is no such statute here.

[3] As to the unsatisfactory state of the "final" order doctrine, see Audi Vision, Inc., v. RCA Mfg. Co., 2 Cir., 136 F. 2d 621, 625; United States v. 243.22 Acres of Land, 2 Cir., 129 F.2d 678, 680; Crick, The Final Judgment as a Basis for Appeal, 41 Yale L.J. (1932) 539; Finality of Judgment in Appeals from Federal Courts, 49 Yale L.J. (1940) 1476.

[3a] The converse is not necessarily true, i. e., it does not follow that because the claims are so closely related that there is federal jurisdiction of the nonfederal claim, therefore the claims are so closely related as to render not appealable an order dismissing one claim while the other remains on the trial calendar. See Collins v. Metro-Goldwyn Pictures Corp., 2 Cir., 106 F.2d 83, 85. There, before trial, the district court entered an order dismissing a claim for infringement of a copyrighted book but retained for trial a claim for unfair competition in using the book's title. As the record shows, diversity of citizenship and the requisite jurisdictional amount were present, so that there was not involved the problem of federal jurisdiction which confronted the court in the Oursler case and which is involved in the instant case. We held in the Collins case that the order was final and appealable, saying in the course of our opinion: "We are not unmindful of the holding in Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148, that claims for copyright infringement and for unfair competition are to be regarded as part of a single cause of action for the purposes of federal jurisdiction. But the court in determining the

questions, since, should we hold that federal jurisdiction of the nonfederal claim is absent, we will be answering both questions at once.[3b] We turn, then, directly to the question whether the trial court, in the instant case, had jurisdiction of the nonfederal claim, under the doctrine of Hurn v. Oursler, supra.

In that case, the plaintiffs, in a suit lacking diversity of citizenship, sought relief on three claims: (1) A claim under the federal copyright statute for conduct infringing plaintiffs' copyright to a play; (2) a nonfederal claim based upon the very same conduct, which, even if it did not constitute infringement of the copyright, was alleged, as a matter of law, to constitute common law unfair competition consisting of the unauthorized use of that same play; (3) a nonfederal claim for unfair competition in the unauthorized use of a revised version of that play, written after the date of the copyright, the revised version not having been copyrighted. The trial court, after a trial, finding no violation of the copyright, held there was no federal jurisdiction of the second and third claims, and dismissed the bill. The Supreme Court held that, since the first or federal claim was "substantial,"[3c] federal jurisdiction existed as to the second claim but held that the federal jurisdiction as to the third claim had been properly denied.

Because that case has recently been much discussed,[4] we quote from it at length:

"The unfair competition in respect of the copyrighted play, according to the allegations, results from the same acts which constitute the infringement and is inseparable therefrom. * * * In Stark Bros. Co. v. Stark, 255 U.S. 50, 41 S.Ct. 221, 65 L.Ed. 496, suit was brought for infringement of a trade-mark and unfair competition. The Circuit Court of Appeals limited damages to the date when notice was given of the registered mark, and refused to allow damages for earlier injuries. This court pointed out that the suit was for infringement of a *registered* trade-mark, not simply of a trade-mark, and that this was the scope of the federal jurisdiction. Agreeing with the lower court that the cause of action for the earlier damages lay outside the federal jurisdiction, this court assumed, though without deciding, that plaintiff 'could recover for unfair competition that was inseparable from the statutory wrong, but it could not reach back and recover for earlier injuries to rights derived from a different source.' In that view, so far as the unfair competition alleged was thus inseparable from the statutory wrong, it would seem that a failure to establish the infringement would not have deprived the federal court of jurisdiction of the claim of unfair competition, but would have left that matter to

---

jurisdictional question before it carefully limited its definition of a cause of action to a case where the bounds between state and federal jurisdiction were being settled. We hold that the claims here sued on could properly be disposed of separately by the trial court and that the order dismissing the copyright claim was a final judgment."

3b This curious situation suggests that, by changes in the statutes relating to appeals, we should be given purely discretionary authority to entertain interlocutory appeals at least from decisions of lower courts affecting substantive rights in cases where such interlocutory appeals might save further expense and delay, appeals in such cases to include, inter alia, appeals from rulings that the trial court has or has not federal jurisdiction.

Where there is but one claim, we now have jurisdiction, at least to some extent, to entertain a petition for mandamus when the lower court erroneously rejects jurisdiction. See In re Hohorst, 150 U. S. 653, 14 S.Ct. 221, 37 L.Ed. 1211; Ex parte Edelstein, 2 Cir., 30 F.2d 636;

certiorari denied Edelstein v. Goddard, 279 U.S. 851, 49 S.Ct. 347, 73 L.Ed. 994. As to our jurisdiction to act by mandamus or prohibition where the lower court improperly assumes jurisdiction of a single claim, see Ex parte United States, June 7, 1943, 319 U.S. 738, 63 S.Ct. 1314.

We have heretofore deemed it appropriate in an opinion to suggest statutory changes. See United States v. Mook, 2 Cir., 125 F.2d 706. Cf. Parke-Davis & Co. v. H. K. Mulford Co., C.C., 189 F. 95, 115; Cardozo, A Ministry of Justice, 35 Harv.L.Rev. 113.

3c See 289 U.S. at pages 243–246, 53 S.Ct. 586, 587, 77 L.Ed. 1148. See, also, to the effect that the federal claim must itself be "substantial," California Water Service Co. v. Redding, 304 U.S. 252, 255, 256, 58 S.Ct. 252, 82 L.Ed. 1323.

4 See, e. g., Jurisdiction Over Non-Federal Claims When Joined with a Federal Question, 52 Yale L.J. (1943) 922; 1 Moore, Federal Practice, 1942 Supplement, 83–84; 3 Moore, ibid, 1942 Supplement, 123–133.

be disposed of upon the merits. * * * The bill alleges the violation of a single right; namely, the right to protection of the copyrighted play. And it is this violation which constitutes the cause of action. Indeed, the claims of infringement and unfair competition so precisely rest upon identical facts as to be little more than the equivalent of different epithets to characterize the same group of circumstances. The primary relief sought is an injunction to put an end to an essentially single wrong, however differently characterized, not to enjoin distinct wrongs constituting the basis for independent causes of action." [5]

The court's statements (that the first and second claims rested "upon identical facts", "characterize the same group of circumstances," resulted "from the same acts," and must be regarded as "inseparable") are, we think, not to be taken too literally. Yet that they were intended to be highly restrictive appears from the court's concluding remarks concerning the second claim: "It is entirely plain that the holding of the trial court disposing of the claim of infringement on the merits also disposed of the claim of unfair competition in respect of the copyrighted play, since both depended upon the same allegations of wrongful appropriation of certain parts of, and conceptions embodied in, petitioners' play. The finding of the court is comprehensive—'That no version of the defendants' play "The Spider" infringed in any way, either with respect to plot, material, arrangement or sequence of events, or incidents, or otherwise, the plaintiffs' copyrighted play.' This finding—not challenged here—contains every essential element necessary to justify the conclusion that there was likewise no unfair competition in respect of the copyrighted play,

since it negatives the allegations of the bill made for the purpose of establishing by the same facts an infringement of the copyrighted play and unfair competition in relation thereto. Upon this finding the court was right in dismissing the bill in so far as it set up a claim of unfair business practices and unfair competition; but was wrong in dismissing it for the want of jurisdiction. It should have been dismissed, as was the infringement claim, upon the merits." [5a]

It thus appears that plaintiffs, to sustain their second claim, had offered no evidence not relevant to and needed to support their first (federal) claim. But in order to support the third claim plaintiffs were obliged to offer not only the evidence needed to support the first claim—i.e., the defendant's production of a play said to invade plaintiffs' rights—but additional evidence not relevant to the first claim, i.e., proof of the additional matter in the revised uncopyrighted version not contained in the copyrighted version. There was a substantial amount of overlapping evidence (what has been called "an identic basic core") as to the claims, but the fact that proof of substantial additional facts was necessary led the Supreme Court to reject federal jurisdiction of the third claim. The doctrine of the Oursler case is thus exceedingly narrow in scope, as appears from the court's language in disposing of the third claim: "During the pendency of the suit petitioners amended their bill so as to make its allegations apply to the uncopyrighted version of their play, namely, that the wrongful acts of respondents were in violation of the rights of petitioners and constituted unfair business practices and unfair competition with respect to that version as well as to the original. Since that

---

[5] The court also said: "Thus tested, the claims of infringement and of unfair competition averred in the present bill of complaint are not separate causes of action, but different grounds asserted in support of the same cause of action. We do not mean by what has just been said to lay down a hard and fast test by which to determine in all situations what constitutes a cause of action. 'A "cause of action" may mean one thing for one purpose and something different for another,' United States v. Memphis Oil Co., 288 U.S. 62, 53 S.Ct. 278, 280, 77 L.Ed. 619 * * *; but, for the purpose of determining the bounds between state and federal jurisdiction, the mean-

ing should be kept within the limits indicated. Compare Baltimore & O. S. W. R. Co. v. Carroll, 280 U.S. 491, 494, 495, 50 S.Ct. 182, 74 L.Ed. 566, and cases cited."

[5a] The court cited its earlier decisions in Siler v. Louisville & Nashville R. Co., 213 U.S. 175, 29 S.Ct. 451, 53 L.Ed. 753, and Lincoln Gas Co. v. Lincoln, 250 U. S. 256, 39 S.Ct. 454, 63 L.Ed. 968; in each of those cases the evidence needed to support the nonfederal and the federal claim was the same. See, also, Geneva Furniture Co. v. Karpen & Bros., 238 U.S. 254, 259, 35 S.Ct. 788, 59 L.Ed. 1295.

claim did not rest upon any federal ground and was wholly independent of the claim of copyright infringement, the District Court was clearly right in dismissing it for want of jurisdiction. The bill as amended, although badly drawn, sets forth facts alleged to be in violation of two distinct rights, namely, the right to the protection of the copyrighted play, and the right to the protection of the uncopyrighted play. From these averments two separate and distinct causes of action resulted, one arising under a law of the United States, and the other arising under general law. For reasons that have already been made manifest, the latter is entirely outside the federal jurisdiction and subject to dismissal at any stage of the case."

It has been suggested that the test laid down in the Oursler case is this: Will the proof necessary to establish the federal claim be "substantially identical" with that necessary to establish the nonfederal claim? That test, which is perhaps well enough, is not "hard and fast"; the question is one of degree, but the allowable latitude, as the Supreme Court decisions go, is indeed narrow. In Stark Bros. Co. v. Stark, 255 U.S. 50, 41 S.Ct. 221, 65 L.Ed. 496, where a claim based on a trade-mark registered under the federal statute was joined with a nonfederal claim based upon acts done before registration, the court, as above noted, denied federal jurisdiction of the second claim because the acts which gave rise to that claim were held to be substantially different from those which gave rise to the first claim; the rationale of the decision, as stated by Mr. Justice Holmes, was that plaintiff "could not * * * recover for earlier injuries to rights derived from a different source." Armstrong P. & V. Works v. Nu-Enamel Corp., 305 U.S. 315,

59 S.Ct. 191, 83 L.Ed. 195, the most recent Supreme Court decision in this field, in no way suggests that the jurisdiction has been widened. There the plaintiff's first (federal) claim was for infringement of a registered trademark and his second (nonfederal) claim, based upon the very same acts of defendant, was for unfair competition in the use by defendant, after the date of registration,[5b] of the same name regarded as a common law trademark; the trial court held the name was not a valid trademark under the Trade Mark Acts, 15 U.S.C.A. §§ 81 et seq., 121 et seq., and refused federal jurisdiction of the second claim; this refusal to retain jurisdiction the Supreme Court held erroneous, citing the Oursler case (in which, 289 U.S. at page 245, 53 S.Ct. at page 589, 77 L.Ed. 1148, the court had expressly stated that the rule applied to "patent, trade-mark, and copyright cases"), and saying that, as the federal claim was substantial, even if it failed on the merits, "jurisdiction should be continued to determine, *on substantially the same facts,* the issue of unfair competition."[6] [305 U.S. 315, 59 S.Ct. 196, 83 L.Ed. 195.] Thus the Nu-Enamel case did not move beyond the boundaries previously set by Oursler and Stark Bros.

The "substantially the same facts" test we have applied in our previous decisions relative to cases of this kind. It is suggested that in those cases we have never actually followed the Oursler case and that those decisions are inconsistent with one another. The suggestion is unjustified. We have six times applied the Oursler doctrine in sustaining federal jurisdiction of nonfederal claims, i.e., we have sustained federal jurisdiction of a nonfederal claim for unfair competition in the use of a common law trademark, coupled with a fed-

---

[5b] That, as alleged in the complaint, the second claim was for the same acts of the defendant occurring after the date of registration, appears from an examination of the record.

[6] The court said: "If it is a properly registered trade-mark, a ground to support the cause of action is violation of the Trade-Mark Act. If it is not a properly registered trade-mark, the ground is unfair competition at common law. The facts supporting a suit for infringement and one for unfair competition are substantially the same. They constitute and make plain the wrong complained of, the violation of the right to exclusive use.

In the Oursler Case there was a valid copyright which was held not infringed. Here the trial court determined the trademark was invalid. The Oursler Case held that where the causes of action are different, the determination that the federal cause fails calls for dismissal. But where there is only one cause of action we do not consider that the holding of the invalidity furnishes any basis for a distinction between this and the Oursler Case. Registration of 'Nu-Enamel' furnished a substantial ground for federal jurisdiction. That jurisdiction should be continued to determine, *on substantially the same facts,* the issue of unfair competition." (Italics added.)

eral claim for infringement of the same name as a registered trademark, when the two claims were based on substantially the same facts,[7] provided the federal claim itself was "substantial." [8] But, when substantial additional evidence was needed to support the nonfederal claim, we have rejected federal jurisdiction thereof in the following five cases: Where a nonfederal claim for unfair competition in the use of a common law trademark was coupled with a "substantial" federal claim for patent infringement;[9] where a nonfederal claim for unfair competition of an unpatented design was coupled with a "substantial" federal claim for infringement of a patented design;[10] where a nonfederal claim for infringement of a common-law trademark and a nonfederal claim for an independent tort were coupled with a federal claim for infringement of a copyright of a radio program;[11] where a nonfederal claim for use of a patented process before the issuance of a patent (through wrongful use of information and confidentially obtained) was coupled with a federal claim for infringing acts done after the patent issued;[12] where a nonfederal claim for unfair compe-

tition based on sales made before registration of a trademark was coupled with a federal claim for sales, infringing the trademark, made after its registration.[13]

In the last two cases cited, we relied on Stark Bros. to show that the facts necessary to support the two claims were not substantially the same.[14] Stark Bros. and those two decisions applying it are alone sufficient to lead to a decision that federal jurisdiction is wanting as to the second (nonfederal) claim here, since that claim is one for damages resulting from defendant's acts antedating the issuance of the patent and is thus "for earlier injuries," i.e., is based on facts substantially different from those on which plaintiff grounds his first (federal) claim. But the disallowance of federal jurisdiction in those cases did not turn on the mere chronological fact that the nonfederal claim was for infringement of a right arising earlier than the right at the bottom of the federal claim, but on the fact that, in order to establish the nonfederal claim, it was necessary for plaintiff to introduce substantial additional evidence. So in Oursler, the rejection of federal jurisdiction as to the third claim was

[7] L. E. Waterman Co. v. Gordon, 2 Cir., 72 F.2d 272; Warner Publication v. Popular Publications, 2 Cir., 87 F.2d 913; Winthrop Chemical Co. v. American Pharmaceutical Co., 2 Cir., 94 F.2d 587; Industrial Rayon Corp. v. Dutchess Underwear Corp., 2 Cir., 92 F.2d 33; Oxford Book Co. v. College Entrance Book Co., 2 Cir., 98 F.2d 688; Pure Oil Co. v. Puritan Oil Co., 2 Cir., 127 F.2d 6.

[8] In Pure Oil Co. v. Puritan Oil Co., 2 Cir., 127 F.2d 6, a federal claim for infringement of a registered trademark was coupled with a nonfederal claim for unfair competition consisting of substantially the same acts, all occurring after the registration of the trademark; the sole question was whether the record showed that the federal claim was sufficiently "substantial" to ground federal jurisdiction, for, unless the federal claim is substantial, there can be no federal jurisdiction of the nonfederal claim no matter how closely related it may be to the federal claim; we held the federal claim substantial and sustained jurisdiction of both claims. See note 3c, supra.

[9] Musher Foundation v. Alba Trading Co., 2 Cir., 127 F.2d 9, certiorari denied 317 U.S. 641, 63 S.Ct. 33.

[10] Lewis v. Vendome Bags, 2 Cir., 108 F.2d 16, certiorari denied 309 U.S. 660, 60 S.Ct. 514, 84 L.Ed. 1008.

[11] American Broadcasting Co. v. Wahl Co., 2 Cir., 121 F.2d 412.

[12] Foster D. Snell, Inc., v. Potters, 2 Cir., 88 F.2d 611.

[13] Treasure Imports v. Henry Amdur & Sons, 2 Cir., 127 F.2d 3.

[14] In Foster D. Snell, Inc., v. Potters, supra, we said that we considered that Oursler had not overruled Stark Bros.

Our previous intimation in L. E. Waterman Co. v. Gordon, 2 Cir., 72 F.2d 272, that Stark Bros. had been overruled by Oursler was dictum. For, in the Waterman case, the nonfederal claim for unfair competition in the use of a common-law trademark (coupled with a federal claim for infringement of a registered trademark) was, as the record shows, for acts done after the registration of the trademark, so that there was no occasion to discuss the Stark Bros. case. That dictum we have rejected in Foster D. Snell, Inc., v. Potters, supra, and Treasure Imports v. Henry Amdur & Sons, supra.

Warner Bros. Pictures v. Majestic Pictures Corp., 2 Cir., 70 F.2d 310, is not in point, since that case involved but a single claim for unfair competition, and both diversity of citizenship and the requisite jurisdictional amount were present. Nor, incidentally, was the issue of appealability there involved, as the appeal was from an order denying an interlocutory injunction.

due to the fact that, in order to sustain it, plaintiffs were obliged to introduce substantial additional evidence, which happened to relate to facts occurring after the date of the copyright on which the federal claim was based.

The crucial factor is not, then, any mere difference in time. As we read the Oursler and Nu-Enamel cases, it is not sufficient that both claims require identical proof of certain facts; federal jurisdiction of the nonfederal claim fails if, in addition to the facts supporting the federal claim, plaintiff, to sustain the nonfederal claim, must rely on substantial supplemental proof not relevant to the federal claim. So in Lewis v. Vendome Bags, 2 Cir., 108 F.2d 16, 18, certiorari denied 309 U.S. 660, 60 S.Ct. 514, 84 L.Ed. 1008, the record shows that there was no differentiating time factor, but (citing Foster D. Snell v. Potters, supra) we denied federal jurisdiction of the nonfederal claim, for unfair use of a nonpatented design of a bag, which could not be sustained without substantial proof in addition to that needed to sustain the claim for infringement of a design patent on the bag; for, in order to sustain the claim for patent infringement, plaintiff needed merely to prove validity and infringement, but she did not need in addition to prove that she had ever made or sold her bag,[14a] or "that the defendant palmed off its bags as the plaintiff's product, or that the [plaintiff's] design * * * had become so associated with the plaintiff in the mind of the public as to acquire a secondary meaning and cause any bag of the same appearance to be ascribed to the plaintiff as the source of production"—all of which evidence was required to support the nonfederal claim of unfair competition.[14b]

So here, disregarding the time factor as such, we find it impossible to hold that the "substantially identical proof" test can yield federal jurisdiction here, in the light of the denial of such jurisdiction as to the third claim in the Oursler case. A much closer relationship was present there between the facts supporting (a) the first claim for violation of the copyright and (b) the third claim for wrongful acts as to the uncopyrighted version than is present here between the facts necessary to support (a) the claim for infringement of the patents and (b) that for the defendant's alleged misconduct in delaying the issuance of the patents. This, indeed, is an a fortiori case. For, while proof of some parts of the Patent Office history might conceivably be pertinent, in some circumstances, in the trial of the patent infringement, such proof would not by any means cover the bulk of the evidence which the plaintiff would be obliged to introduced in order to show the alleged misconduct of the defendant during the pendency of the patent applications in the Patent Office. It may perhaps be true that, to sustain his second as well as his first claim, plaintiff here would be required to prove the validity of his patents and, for that purpose, to introduce evidence of novelty as against the prior art.[15] But, to sustain his second (nonfederal claim) he would need, as his pleadings demonstrate, to go far beyond that and to make proof of many substantial additional facts not relevant to the first claim: He would need to prove that the defendants had filed patent applications based on their false oaths; that plaintiff had previously disclosed his inventions to them and they had previously seen and tested the commercial embodiments of his inventions; and that in interference proceedings with plaintiff they had testified falsely and induced false testimony to be given.

From the point of view of convenience to plaintiffs and "judicial economy," there is indeed much to be said in favor of the proposal generously to extend the Oursler doctrine.[16] But this court cannot indulge in such generosity until the Supreme Court authorizes us to do so. We must be guided by its decisions; "we are merely a reflector, serving as a judicial moon."[17] Pa-

---

[14a] Continental Paper Bag Company v. Eastern Paper Bag Company, 210 U.S. 405, 28 S.Ct. 748, 52 L.Ed. 1122.

[14b] The language quoted in the text is from our discussion—108 F.2d at page 18 —of the proof needed to support the nonfederal claim. Defendant, in its brief in that case, specifically related the facts there discussed to the jurisdictional issue; in our opinion we did not thus specifically relate them, but they obviously affected our decision on that issue.

[15] We need not here consider whether in a suit in a State court on his nonfederal claim, plaintiff would be obliged to prove the validity of his patent or could rest, for that purpose, on the fact that the patent had issued.

[16] See footnote 4, supra.

[17] Choate v. Commissioner, 2 Cir., 129 F.2d 684, 686.

tently, the Supreme Court has, in this field, felt the constraint of constitutional and statutory limitations which often interfere with convenient and desirable practices.[18] The restrictive character of those limitations is for the Supreme Court, not for us, to determine. In the Oursler case, the court defined federal jurisdiction in narrow terms which inferior courts may not disregard. Having in mind that we should follow new "doctrinal trends" in the Supreme Court,[19] we cannot shut our eyes to recent decisions manifesting a marked disposition not to enlarge but to reduce federal jurisdiction even where considerable inconvenience to one of the parties may result. See, e. g., Toucey v. New York Life Ins. Co., 314 U.S. 118, 62 S.Ct. 139, 86 L. Ed. 100, 137 A.L.R. 967; City of Chicago v. Fieldcrest Dairies, 316 U.S. 168, 62 S.Ct. 986, 86 L.Ed. 1355; Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971; Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098; Indianapolis v. Chase National Bank, 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47. Accordingly, we adhere to our recent decisions construing the Oursler doctrine. We conclude therefore that the plaintiff's second claim, regarded as a claim for a common law tort, is outside the jurisdiction of the federal courts.

For reasons noted above, the fact that the plaintiff's two claims are so distinct as to bar the application of the Oursler doctrine compels the conclusion that the order striking out the second claim is final and appealable. The two claims here are far more differentiated from one another than were the two claims in Collins v. Metro-Goldwyn Pictures Corp., 2 Cir., 106 F.2d 83, where, in the light of Rule 54(b), 28 U.S.C.A. following section 723c, we held that an order of the trial court dismissing a claim for infringement of a copyrighted book, but making no disposition of a claim for unfair competition in using the book's title, was a final and appealable order.[20]

That our decision in the Collins case was not in contravention of the spirit of F. R. C. P. 54(b) is indicated by the following: In Reeves v. Beardall, 316 U.S. 283, 62 S.Ct. 1085, 1087, 86 L.Ed. 1478, the court had before it the question of what constitutes a final order under that rule. There the plaintiff filed a complaint containing three claims. The first was a claim against a decedent's estate on a promissory note; the second, a claim on an alleged contract between plaintiff and decedent whereby the latter agreed not to change her will in consideration of plaintiff's return of certain securities and plaintiff's agreement not to press for payment of the note; and the third, a claim against a third party who was alleged to hold assets of decedent which would belong to plaintiff under decedent's contract not to change her will as alleged in the second claim. The District Court dismissed the second claim and entered a judgment thereon in favor of defendant. The Fifth Circuit held this order not appealable. The Supreme Court, having granted certiorari ("because of an apparent conflict between that decision and such cases from other circuits as Collins v. Metro-Goldwyn Pictures Corp., 2 Cir., 106 F.2d 83"), reversed, in an opinion which quoted with approval from our opinion in the Collins case. While denial of certiorari is not ordinarily of great significance, it is perhaps not altogether unimportant that the writ was denied as to three of our decisions despite vigorous and detailed dissents thereto in this court, one of those denials of the writ occurring since Reeves v. Beardall; see Musher Foundation, Inc., v. Alba Trading Co., Inc., 2 Cir., 127 F.2d 9[21] (where we relied on the Oursler case and followed our decision in the

---

[18] That the statutes relating to our appellate jurisdiction also interfere with "convenience to the parties," see Judge Clark's comment in Sidis v. F-R. Pub. Corp., 2 Cir., 113 F.2d 806, 811, 138 A.L. R. 15; see also authorities cited in note 3, supra.

[19] Picard v. United Aircraft Corp., 2 Cir., 128 F.2d 632, 633, 636; Perkins v. Endicott Johnson Corp., 2 Cir., 128 F.2d 208, 217, 218; The Attitude of Lower Courts to Changing Precedents, 50 Yale L.J. (1941) 1448.

[20] See comment, note 3a, supra.

[21] Certiorari denied 317 U.S. 641, 63 S.Ct. 33. There the federal claim was for patent infringement and the nonfederal claim was for unfair competition consisting of infringement of plaintiff's common-law trade-mark. We held that an order dismissing the nonfederal claim was appealable and, on the merits, held that there was no federal jurisdiction of that claim.

**904**

*Collins* case); *Lewis* v. *Vendome Bags,* 2 Cir., 108 F.2d 16[22]; *Sidis* v. *F-R Pub. Corp.,* 2 Cir., 113 F.2d 806, 138 A.L.R. 15.[23]

■ It is suggested that we should here follow the procedure adopted in *Audi Vision, Inc.,* v. *RCA Manufacturing ·Co.,* 2 Cir., 136 F.2d 621, 625; i.e., deny appellate jurisdiction and yet write an opinion telling the trial court that. its order dismissing the plaintiff's second claim before trial, since it was not "final," was only provisional, being in the nature of a pre-trial order which it may revoke when the case comes to trial; we would thus intimate to the trial court that it might well reconsider its dismissal order and try the second claim. But such a procedure would mean this: While purporting to hold that, as we have no appellate jurisdiction of the case in its present stage, we must dismiss the appeal, we would in fact be taking appellate jurisdiction to advise the trial court—in a manner approaching an admonition—of our views concerning an order from which an unauthorized appeal has been attempted; for, as the trial court knows, without our saying so, that it has the power, at the trial, to vacate such a dismissal order if not "final," our saying so in a particular case will of course be taken as a pointed expression of our desire in the matter which the trial court is unlikely to disregard. The suggested procedure would, we think, violate the statute relating to our appellate jurisdiction. Were we to follow the suggested course, we would create a new type of judge-made extra-statutory, appeals, i.e., we would invite appeals, to procure our advisory opinions, concerning matters not properly before us under the statute.[24]

■ Since we hold that here we have appellate jurisdiction, we might, however, if the circumstances justified it, remand the case for the taking of evidence in order to determine whether the facts are such as to ground federal jurisdiction;[25] but here there is no need for such a step, since the plaintiff has, with considerable precision, stated in his pleadings the character of the evidence he would, if permitted, introduce to support his second claim.

We decide, then,. that, on the theory that plaintiff's second claim is for a common law tort, the order dismissing that claim for want of federal jurisdiction is appealable and that the order was correct.

■ Plaintiff, however, advances another theory as to the nature of the second claim, viz., that the patent statute, by implication, authorizes a suit for "constructive infringement" based upon misconduct consisting of interference with the proceedings in the Patent Office which delayed the issuance of the patent. So regarding plaintiff's second claim, it is (for reasons already canvassed) so distinct from his patent infringement claim that the order striking out the second claim is appealable. We find no decision one way or the other as to whether a suit on such a claim is within the patent law. Accordingly, no matter what we may think of the merits of such a claim, plaintiff's suit therefore is, for jurisdictional purposes, a suit arising under the patent law, with the consequence that federal jurisdiction exists. *The Fair* v. *Kohler Die & S. Co.,* 228 U.S. 22, 25, 33 S.Ct. 410, 57 L.Ed. 716.

But coming to the merits of the claim, we cannot possibly sustain it. The very language of § 4921 of the patent statute, 35 U.S.C.A. § 70, on which plaintiff relies renders it utterly unfounded. That section provides that courts vested with jurisdiction of cases arising under the Patent Laws shall have power to grant injunctions "to prevent *the violation of any rights secured by patent* * * *; and upon a decree being rendered in any such case for *infringement,* the complainant shall be entitled to

---

22 Certiorari denied 309 U.S. 660, 60 S. Ct. 514, 84 L.Ed. 1008. There the federal claim was for infringement of a design patent on a handbag and the nonfederal claim for unfair competition as to handbags not embodying the patented design. We held appealable an order dismissing the nonfederal claim and, on the merits, held there was no federal jurisdiction of that claim.

23 Certiorari denied 311 U.S. 711, 61 S. Ct. 393, 85 L.Ed. 462. Diversity of citizenship and the requisite jurisdictional amount were there alleged. We held appealable an order dismissing claims based on violations of the right of privacy while there remained undismissed a claim for malicious libel.

24 While we reject the suggestion, we note that it does highlight the desirability, in the interest of avoiding delay and expense, of the proposed amendment to the statutes, governing our appellate jurisdiction, described in note 3b, supra.

25 Cf. *Benz* v. *Celeste Fur Dyeing Corp.,* 2 Cir., 136 F.2d 845, 848, and cases there cited; *Nachman Spring-Filled Corp.* v.·*Kay Mfg. Co.,* 2 Cir., November 18, 1943, 139 F.2d 781.

recover * * * the *damages* the complainant has *sustained thereby* * * *. If on the proofs it shall appear that the complainant has suffered *damage from the infringement* or that the defendant has realized profits therefrom" then, in certain circumstances, the court may receive opinion or expert testimony and upon the evidence may decree "the payment by the defendant * * * of a reasonable sum as profits or *general damages for the infringement.*" This section also provides that in any suit "brought *for the infringement of any patent* there shall be no recovery for profits or *damages for any infringement* committed more than six years before the filing of the bill of complaint," etc. The words we have italicized in the foregoing quotation make it unmistakably clear that this section does not authorize the recovery of damages for acts done prior to the issuance of the patent; the rights conferred thereby relate solely to infringements of a patent after its issuance.[26]

The appeal from the order of January 5, 1943 is dismissed. The order of March 12, 1943 is affirmed.

CLARK, Circuit Judge (dissenting from so much of the decision as affirms, rather than dismisses, the second appeal).

Since my attempts to secure complete adjudication federalwise of all claims, accessory as well as principal, flowing out of patents or copyrights have been found so unpersuasive by my colleagues, Musher Foundation v. Alba Trading Co., 2 Cir., 127 F.2d 9, and cases cited at page 11, I have little excuse for writing more. Perhaps, however, a brief word may be allowed for the present slightly different, but to my mind anything but "a fortiori," case, especially since the leading academic authority has criticized our holdings quite unmercifully, Moore's Federal Practice, 1942 Cum. Supp., vol. 1, 82-84, vol. 3, 124-132, and a recent careful study of this problem, Jurisdiction in Federal Courts over Non-Federal Claims When Joined with a Federal Question, 52 Yale L.J. 922, 925, finds the decisions of the Second Circuit "particularly difficult to reconcile." Here the basic matter is the plaintiff's claim of a new idea embodying invention, the fruits of which, as he asserts, the defendants are taking from him both by infringing his patent and by fraudulently keeping him from a patent for four years. The essential point upon which all else turns is whether he has novelty beyond anything in the prior art; both logically, and practically as a matter of proof, that is the controlling and major issue as to both of his contentions. In the dialectical terms of Hurn v. Oursler, supra, he has therefore a single cause of action from which his two asserted rights of action flow. (I agree that he was not successful in showing an assumed third right of action for "constructive infringement.") The invitation now necessarily conveyed by our decision to him to bring his second right of action hereafter in a state court seems, as I take it we substantially agree, "to violate the simplest dictates of judicial economy." 52 Yale L.J. at page 927. See, also, Shulman and Jaegerman, Some Jurisdictional Limitations on Federal Procedure, 45 Yale L.J. 393, 400; 49 Yale L.J. 1476.

It is true, of course, that the dialectical approach of the Oursler case left many matters far from clear. But it must be remembered that its whole point was a reversal of the narrow "second circuit rule"; as Moore says, "Naturally, the Second Circuit cannot verbally cling to its former rule; but as a practical matter it does in many cases just about what it did before, although it now achieves the result of refusing jurisdiction over the claim of unfair competition by calling it a separate and distinct cause of action." 1 Moore's Federal Practice, 1942 Cum.Supp., 83. The Oursler case did not make its meaning of "cause of action" clear; but in the recent case of Reeves v. Beardall, 316 U.S. 283, 62 S.Ct. 1085, 86 L.Ed. 1478, the Court did definitely follow the fact, as distinguished from the legal right, test, of cause or unit of judicial action.[1] And in the Oursler case it did allow joinder of rights of action for copyright and unfair competition as a single unit, just as in the Nu-Enamel case, 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195, it al-

---

[26] We see nothing in § 4899, 35 U.S.C. A. § 48, which can lead to any other conclusion.

[1] "The Rules make it clear that it is 'differing occurrences or transactions, which form the basis of separate units of judicial action.' Atwater v. North American Coal Corp., 2 Cir., 111 F.2d 125, 126. And see Moore, op. cit. [3 Federal Practice, 1941 Cum.Supp.], 92-101; 49 Yale L.J. 1476." Reeves v. Beardall, 316 U.S. at page 285, 62 S.Ct. 1085, 1087, 86 L.Ed. 1478.

lowed joinder of rights of action for infringement of a trademark and for unfair competition. Of course, to both such rights there is an identic basic core—just as here; but to the complete unfolding of each right there are, of necessity, additional and overlapping details which to my mind are at least as extensive as those set forth here. Unfair competition is a species of fraud which, as traditionally defined, requires some such thing as a passing off of defendant's product as plaintiff's device or name. It will not do, it seems to me, to erect Justice Sutherland's comparative terms—"so precisely that"—into an absolute—"precise"; the actual decisions were that rights of action depending upon only partly overlapping facts were held to arise out of the same cause of action. Here the only additional feature was one of time, or chronological sequence of events; and there is nothing in this to change either the logic or the common sense of the view of cause of action which seems to me inherent, both in the new rules and in the series of recent decisions of the Supreme Court just cited.[2]

If this is a claim properly cognizable by a federal court, then it rather naturally follows that it should not be disposed of summarily and without view of the evidence, that the order entered below was only provisional and not appealable, and that the trial judge at the hearing on the merits has full authority to reconsider and review this provisional result, just as in Audi Vision, Inc., v. RCA Mfg. Co., 2 Cir., 136 F.2d 621.[3] This is all the more desirable if, as I suspect is a real reason behind much of our holdings as to jurisdiction, we have serious doubts of plaintiff's ability to prove a case ultimately. Even so, the defendant also has a vital interest in the termination of litigation; and a half hour of listening to testimony will afford a court a better chance by far of settling these issues than all the preliminary and interlocutory proceedings possible. I venture to suggest as almost an aphorism of justice that short cuts to disposition of cases, where the merits have not been disclosed either by the summary-judgment procedure or by a trial, prolong, rather than shorten, litigation; they leave the defeated party with a feeling that he is being prevented from showing his case and naturally arouse his instincts to accept the implied invitation to fight further.

It is true that the Supreme Court has denied certiorari in several of our recent decisions on appealability and jurisdiction. It may be that we should read into this more than we have been told we should ordinarily discover in denials of certiorari. One must not be dogmatic, but I am inclined to think otherwise. For after all, the Oursler doctrine is one of degree, and the closer integration of the claims herein than in our other cases presents a new question—particularly as the trend of our decisions seems to me to take all life and meaning from the desirable step signalized by the Oursler case. (I am wondering as a practical matter when, if at all, my brothers will find a case for the application of the Oursler principle.) Further, there is what has seemed to me, as well as the others cited above, the very real conflict of *decisions* within this circuit—apart from my individual views; a conflict which the Court may eventually wish to resolve.[4] Finally,

---

[2] I do not see that other recent decisions of the Supreme Court in cases where the policy not to interfere with state processes is obvious, e. g., Toucey v. New York Life Ins. Co., 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100, 137 A.L.R. 967, applying a well-known federal statute in denying a federal injunction against a state tribunal, teach us anything about our present situation, where the primary federal jurisdiction is clear and the state governments can have no possible feeling of being unduly constricted by a decision holding that jurisdiction complete.

[3] This appeal and defendants' motion to dismiss it require us to define the nature of the order appealed from. This being so, it is hard to understand what impropriety there can be in a simple statement—without command to, or coercion of, the trial court—of what we conceive to be the effect of our holding; at least we did not see any in the Audi Vision case.

[4] Among our decisions supporting jurisdiction are L. E. Waterman Co. v. Gordon, 2 Cir., 72 F.2d 272, 274; Warner Publication, Inc., v. Popular Publications, 2 Cir., 87 F.2d 913; Industrial Rayon Corp. v. Dutchess Underwear Corp., 2 Cir., 92 F.2d 33, certiorari denied 303 U.S. 640, 58 S.Ct. 610, 82 L.Ed. 1100; Winthrop Chemical Co. v. American Pharmaceutical Co., 2 Cir., 94 F.2d 587; Oxford Book Co. v. College Entrance Book Co., 2 Cir., 98 F.2d 688; Pure Oil Co. v. Puritan Oil Co., 2 Cir., 127 F.2d 6. In Lewis v. Vendome Bags, Inc., 2 Cir., 108 F.2d 16, there was a decision both on the merits and on jurisdiction. The district court decisions in this circuit are too numerous to cite; they are

the cases which the Supreme Court declined to review were those where plaintiff's ultimate success seemed most unlikely. It is one thing to urge that we, in performing our recognized duty to pass on all cases properly appealed, should make our decision as complete as possible on the particular matters involved; it is quite another to expect the Supreme Court, among all the important issues pressed before it, to bring up weak claims in private litigation against the decisions of two lower tribunals.

While I remain doubtful as to whether a judicial opinion is a proper forum for the discussion of the pros and cons of legislative reforms, I feel I ought to add a further comment upon the proposal made in the Audi Vision case, 2 Cir., 136 F.2d at page 625, for extending the privilege of interlocutory appeals, now repeated here in somewhat altered form, lest it be taken as the finally considered judgment of this court. The earlier and broader suggestion overlooked the danger therein inherent of an invitation for appeal on decisions before trial and thus usually on procedural matters, of which most would become unimportant after the merits had been considered. In other words, this put an emphasis upon procedural issues in the appellate court, just at a time when the federal trial court trend has been so decisively and successfully away from such an emphasis.[5] The proposal is now more properly limited

collected in Moore, supra, and in 52 Yale L.J. 922, 924. Cf. Corning Glass Works v. Pasmantier, D.C.S.D.N.Y., 30 F.Supp. 477, 480; Time, Inc., v. Barshay, D.C. S.D.N.Y., 27 F.Supp. 870.

The attempt to rationalize our decisions by referring to small differentiations in the facts, while necessarily admitting the major point that some combinations of different wrongful acts are permissible, seems to me quite unsatisfying; it means in actual practice that trial courts, lawyers, and litigants cannot know where they stand until the appellate court has spoken in each particular case. The only line of demarcation which the case analysis herein seems to emphasize is a "chronological difference" in the acts, though that is in terms repudiated, as it is believed it must be on grounds both of logic and reason and of its failure to explain our cases, e. g., Lewis v. Vendome Bags, Inc., supra; Musher Foundation v. Alba Trading Co., supra; or American Broadcasting Co. v. Wahl Co., 2 Cir., 121 F.2d 412; or Sidis v. F-R Pub. Corp., 2 Cir., 113 F.2d 806, 138 A. L.R. 15 (dealing with appealability). Unfortunately under the circumstances all meaning has been extracted from the "substantial additional evidence" test prior to the ipse dixit of the appellate court; thus, it being conceded that at times at least unfair competition may be coupled with the federal claim, the result in the Lewis case was made to turn only upon whether the defendant's handbag was more nearly like the plaintiff's design patent or the plaintiff's commercial bag—a matter to be determined upon inspection of the patent drawings and the two bags.

5 The unusual emphasis on procedural objections in New York state practice is well known; that it is accentuated by the freedom of appeals on these points can hardly be doubted. A point of practice in a particular case cannot be considered as settled until an appeal is had at least to the Appellate Division. Cases are too usual to be documented; compare decisions this fall, such as Fienberg Furniture Co. v. Chorost, 266 App.Div. 938, 44 N.Y.S.2d 32, and Frank v. Jaffa, 266 App. Div. 964, 44 N.Y.S.2d 116, affirming the denial of motions to strike matter from answers, or the usual appeals involving bills of particulars, e. g., pages 260, 270(3) and (4), 463(3), 595, and 753(4) of 35 N.Y.S.2d [pages 795, 766, 765, 878, and 836 of 264 App.Div., and page 1063 of 263 App.Div.]. The reports do not usually show the nature of the cases decided without opinion, but the indications are that there are nearly as many decisions on procedural points as on the merits, with another like group given up to decisions whether further appeal to the Court of Appeals shall be allowed. Appeals to the Court of Appeals are more restricted, N. Y. Civil Practice Act, §§ 588, 589, but the number of procedural appeals which do get to that court and the pressure thus put upon the court seem undesirable. As examples where the court has yielded may be cited Ader v. Blau, 241 N.Y. 7, 148 N.E. 771, 41 A. L.R. 1216, Cardozo, J., dissenting, extensively criticized, e. g., 25 Col.L.Rev. 975, 29 Col.L.Rev. 158, 166, 630, 11 Corn. L.Q. 113, 32 Mich.L.Rev. 36, 47–50, 35 Yale L.J. 85, N.Y.Jud.Council, First Rep., Legislative Document, 1935, No. 48, p. 44, until its effect was overcome by legislation, N.Y.Laws 1935, 339, amending N.Y.Civil Practice Act, § 258, and Terner v. Glickstein & Terner, Inc., 283 N.Y. 299, 28 N.E.2d 846, dismissing a "law" claim as being brought "in equity," contrary to Wainwright & Page, Inc., v. Burr & McAuley, Inc., 272 N.Y. 130, 5 N.E.2d 64. Compare comments of Mr. Justice Shientag in Moulders of Legal Thought, 1943, 149. The objection is

in an attempt to restrict the review to matters of substance only, although these are to include matters of jurisdiction, and hence presumably of venue and process and undoubtedly of the nonwaivable objection [Rule 12(h)] of failure to "state" a claim or defense. But the slipperiness of the suggested distinction between substance and nonsubstance means that an appeal must be taken and substantially heard in order to find out whether an appeal lies—as well as whether it possesses sufficient merit to justify a formal hearing. The problem of draftsmanship, here hardly hinted at, is unusually difficult; in practical fact no purely verbal formula is likely to prevent appeals on the mere forms and niceties of litigation.[6] If the proposal were to be limited to only cases of *denial* of the right to give relief by the trial court, it might avoid some of these difficulties; but the few additional cases, beyond those already appealable, where the district court is found in error in this regard, suggest that such a reform would not be greatly needed.

not solely or perhaps even mainly to the overburdening of appellate courts with unnecessary appeals; it is to the resulting improper emphasis upon form which then shapes and distorts the entire practice of the jurisdiction—a point Mr. Crick overlooked in his otherwise excellent article on The Final Judgment as a Basis for Appeal, 41 Yale L.J. 539.

[6] Thus the appeal allowed from an "order" in an action to the Appellate Division in New York is stated to be from six more or less definitely defined kinds of orders (cf. No. 4—"Where it affects a substantial right"), N. Y. Civil Practice Act, § 609; but these provisions appear to have been ineffective in screening out undesirable appeals, see note 5, above.