HUNTINGTON PALISADES PROPERTY OWNERS CORPORATION, Limited, v. METROPOLITAN FINANCE CORPORATION OF CALIFORNIA.

No. 12192.

United States Court of Appeals
Ninth Circuit.

Feb. 7, 1950.

Writ of Certiorari Denied June 5, 1950.

See 70 S.Ct. 1027.

Corporation, Ltd., because of a dispute between the two as to the effectiveness of certain deed restrictions, conditions and reservations. The defendant responded by answer and also filed a pleading designated a cross-complaint in which the pleader prayed for declaratory relief regarding the same subject matter. There is common agreement that a substantial controversy exists between the parties.

Plaintiff moved to dismiss defendant's so-called cross-complaint on the ground that it failed to state a claim upon which relief could be granted, which motion the court sustained and thereupon entered a judgment of dismissal of the so-called cross-complaint,[1] and defendant thereafter filed a notice of appeal. Without awaiting further action upon the attempted appeal the district court rendered a summary judgment upon the complaint and answer in favor of plaintiff. Defendant now appeals from both judgments.

Appellant has misentitled his pleading, designated cross-complaint, [see Rules 7 and 13(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A.] and we treat it as a compulsory counterclaim. The granting of appellee's defensive motion [interposed under Rule 12(b) of such rules] is not an appealable ruling. See Rule 54(b) of such rules; Toomey v. Toomey, 1945, 80 U.S. D.C.App. 77, 149 F.2d 19. We shall hereinafter more fully discuss the pleadings and their purport.

On August 16, 1926, The California Trust Company, a corporation, conveyed a lot in a tract of land subdivided into residential building lots and other uses not in issue here to Percy W. Rairden, reserving to itself certain reversionary rights called conditions, restrictions and reservations, which by the said deed were provided to run with the land for the benefit of all lot owners in the tract.[2] The case was tried upon the as-

Smith & Forbes, Paul R. Smith, Santa Monica, Cal., for appellants.

MacFarlane, Schaefer & Haun, Henry Schaefer, Jr., Raymond V. Haun and William Gamble, Los Angeles, Cal., for appellee.

Before STEPHENS and POPE, Circuit Judges, and McCORMICK, District Judge.

STEPHENS, Circuit Judge.

On the face of the record there are two judgments here, arising out of one case heretofore tried in the United States district court. Jurisdiction was obtained through diversity of citizenship of the parties. The plaintiff, Metropolitan Finance Corporation of California, filed an action for declaratory relief against defendant, Huntington Palisades Property Owners

---

1. Actually, the pleading appearing in the record is an "Amended Cross-Complaint" filed after a similar motion was sustained as against defendant's "Cross-Complaint" with leave to amend.

2. Some of the requirements of the Rairden deed binding upon appellee and cross-defendant are as follows:

"It is understood and agreed that this conveyance is made and accepted, and said realty is hereby granted upon and

sumption that each deed evidencing the transfer of each lot out should and did contain the conditions, restrictions and reservations as were contained in the Rairden deed inclusive of the fact that the Rairden deed contained a condition or provision that when a certain portion of the lots had been deeded out a corporation should be formed in which each lot owner should be a member and that the reversionary rights referred to should be transferred to the corporation which would have certain rights and duties in relation thereto. We set out such portion of the Rairden deed as is pertinent:

"(b) No residence shall be built or allowed to remain upon any lot which residence shall cost and be reasonably worth less than the sums fixed in the following schedule, to-wit: * * * [on the lot which appellee owns] not less than $8,000.-00.

*   *   *   *   *   *

"(d) There shall not be erected on any lot, any residence which shall have a ground floor space of less than 500 square feet, exclusive of any portion thereof used for a garage or for an outside porch * * *.

*   *   *   *   *   *

"(j) No building or other structure shall be erected or the erection thereof begun on said premises until the plans and specifications thereof shall have been first presented to and approved in writing by the Seller or by the property owners corporation herein referred to, as to outward appearances and design.

*   *   *   *   *   *

"It is further covenanted that the Grantor, as soon as one half of the lots in said tract shall have been sold, shall cause to be formed a mutual non profit corporation under the laws of the State of California, in which the Grantee by the acceptance hereof agrees to become, and shall be, a member * * *."

"The articles of incorporation of said corporation shall specify, among the purposes and duties of said corporation, the *enforcement* [emphasis ours] of all of said restrictions, covenants, and conditions and the maintenance, preservation and improvement of said properties, and the keeping and maintaining of said tract and every part thereof in a clean and sanitary condition, including the removal of weeds and rubbish from vacant property and streets, so far as it may lawfully act, and the transaction of such other business as may be permitted by law. * * * The Grantor shall be entitled to, and obligated to accept, membership in said corporation, and shall have the benefit and bear the burdens of such membership with respect to the unsold lots in said tract."

" * * * The Grantor further agrees that upon the organization of said corporation, it will convey to the said corporation its reversionary interests and title and all rights in or to the property hereby conveyed, arising or that may arise, out of the restrictions and conditions herein expressed."

Eventually the contemplated corporation was formed under its Articles of Incorporation and By-Laws, and the rights reserved were transferred to it. Thereafter in 1944 the plaintiff, Metropolitan Finance Corporation, purchased one of the lots receiving a deed containing the restrictions, covenants, conditions and reservations referred to, and received and acknowledged notice

---

subject to the following covenants, conditions, restrictions and reservations, which covenants, conditions, restrictions and reservations shall apply to and run with said land.

*   *   *   *   *   *

"The purchaser acknowledges, and agrees that said *restrictions, covenants* and *conditions* are made and imposed for the purpose of *carrying out*, and *pursuant to a general plan* adopted by the seller for the *development* and *improvement* of the *whole* of said tract, and are designed for the *mutual benefit of every lot* in said tract, and are *imposed* upon the premises herein particularly described as a *servitude* in favor of said tract and each and every other lot therein as the dominant tenement or tenements."

"The Articles of Incorporation of said Corporation shall specify among the purposes and duties of said corporation, the enforcement of all said restrictions, covenants, and conditions and the maintenance, preservation and improvement of said property." [Emphasis ours]

of its consequential membership in the corporation. On the 17th of February, 1945, the corporation's Board of Directors passed a resolution adopting a square footage restriction on the construction of improvements on the lots in the place of the dollar valuation. Under the original restriction, the square footage requirement was 500 and the dollar cost was varied for various lots, the lot in suit carrying an $8,000.00 requirement. Under the terms of the Board of Directors' resolution the cost requirement was eliminated and the square footage requirement was raised to 1900.

Sometime prior to April 2, 1948, the lot owner (plaintiff) notified the property owners corporation (defendant) that it intended to improve its property with a building containing but 1500 ground floor square footage and the corporation, deeming such a building not to be within the restrictions, refused to approve it. The obvious difference between these parties is sought to be cleared up by a court decree declaring the parties' rights. In the course of the litigation in the district court, the court decreed a dismissal of the so-called cross-complaint and "cross-complainant" corporation appealed. Thereafter and before the appeal was heard in this court the district court entered its summary judgment on the complaint and answer in favor of the plaintiff lot owner. The pleadings reveal an additional element concerning a $10 architect's fee but as will be seen by a note in the margin we need not consider it.[3]

We shall generally refer to the parties as "plaintiff" and "defendant".

The plaintiff claims that it is not bound at all by the corporate resolution changing the restrictions while the defendant claims that plaintiff is bound by the resolution on theories which may be described as follows:

(a) The terms of the Rairden deed and succeeding deeds authorize the inclusion in the corporate Articles of Incorporation and By-Laws to provide therein that the changes evidenced by the resolution may be made;

(b) In accepting membership in the corporation, plaintiff became bound to accept all future changes through action of the corporation, as a party to a contract; also that unless bound by the resolution plaintiff will be unjustly enriched.

(c) Plaintiff is bound by the change under the doctrine of equitable estoppel or estoppel by laches.

*Do the terms of the Rairden deed and succeeding deeds authorize the inclusion in the corporate Articles of Incorporation and By-Laws of the provision therein which purports to authorize changes in the lot restrictions?*

■ The only power given the corporation or its Board of Directors by the deeds upon this point is: " * * * the enforcement of all of said restrictions, covenants, and conditions and the maintenance, preservation and improvement of said properties." It is not contended by defendant that this grant of power specifically provides for changes in the restrictions but it is contended that the power given by the expression "maintenance, preservation and improvement of said properties" is sound ground for the inclusion in the corporate Articles of Incorporation and By-Laws of the provision therein reading as follows: "To exercise such powers of control, interpretation, * * * modification, amendment, cancellation, annulment, and/or en-

---

3. Also, the plans and specifications were not approved because plaintiff-defendant failed to pay a $10 fee for services as required by the same resolution as discussed in the text above. Although relief was requested by plaintiff-complainant as to the required fee, the summary judgment on the complaint and answer gave none, "counsel for plaintiff having stated that prayer and relief upon the plaintiff's complaint for declaratory relief would be limited to a declaration that * * * monetary limits upon construc-

tions costs on such property could not be converted into a square footage restriction, nor could said restriction with respect to square footage be modified by increasing the square footage requirement by action of the defendant through its Board or otherwise * * *."

The cross-complaint includes a prayer for the enforcement of this assessment. However the point was not argued to this court in the briefs nor orally and it is apparent that it was not pressed in the district court. We do not consider it.

forcement of covenants, reservations, restrictions, liens, and charges imposed upon the real property within said Huntington Palisades." According to the logic of the situation, as defendant sees it, the resolution does not *change* the restrictions; it merely adjusts the restrictions so that they remain the same realistically as they were provided for in the Rairden deed. This is so, it argues, because under the power set out in the last above quotation the wording of the restriction as phrased by the Board of Directors, (though it says the *change* is made from a cost value to a square footage requirement) amounts to the same restriction as set out in the Rairden deed. That is, the house which may be built under the square footage requirement of 1900 measured by the $8,000.00 minimum cost would be substantially the same class of improvement that would have been erected at the time of the Rairden deed.

There are several defects in the reasoning. We cannot read into the phrase "maintenance, preservation and improvement" the power of the corporation to *control, interpret, modify, amend* or *annul* the restrictions which are written into the Rairden deed. We cannot read into such phrase the conferment of power to the corporation of use of its judgment to adjust to its own phraseology what was really meant and not what was really written in the Rairden deed. We think there is a fatal non sequitur in defendant's conclusions in that there was not merely an adjustment of the restrictions so that a building to be erected in 1945 when the resolution was adopted or in 1948 when plaintiff proposed to build would have to be in the same class as one erected at or about the time of the Rairden deed. The Rairden deed required that the improvement should cost $8,000.00. The resolution did not adjust the dollar cost unit adopted in the Rairden deed to provide for the additional building cost but purported to change the basis of the restriction to the *size* of the building. We do not hold that an adjustment on the dollar basis would have been valid. We are merely saying that the adjustment was not on the basis of a revaluation of the dollar but a change to a quantitative unit other than the one used

in the Rairden deed. It is said in Firth v. Marovich, 1911, 160 Cal. 257, at page 261, 116 P. 729, at page 731, Ann.Cas.1912D, 1190, in a case involving building restrictions: "While restraints of this character are to be construed strictly as against the grantor (Civ.Code, § 1442; Reclamation Dist. v. Van Loben Sels, 145 Cal. 181 [78 P. 638] ), they must be enforced when a case coming clearly within their terms is shown." In our case we think the restraint provided by the corporate resolution is not clearly or at all within the terms of the Rairden deed. "The law is well settled in California," says the California District Court of Appeal, Wing v. Forest Lawn Cemetery Ass'n, 1940, 15 Cal.2d 472, at pages 479–480, 101 P.2d 1099, at page 1103, "that the deed is the final and exclusive memorial of the intention and rights of the parties. (Citing authorities.) Furthermore, any provisions of an instrument creating or claimed to create such a servitude will be strictly construed, any doubt being resolved in favor of the free use of the land. (Citing authority.) * * * As a matter of policy, the understanding of the parties should be definite and clear, and should not be left to mere conjecture. Property described in the deed creating the equitable easements, and no other property should be affected thereby." And it is said in Werner v. Graham, 1919, 181 Cal. 174, at page 184, 183 P. 945, at page 949: "The intent of the common grantor— the original owner—is clear enough. He had a general plan of restrictions in mind. But it is not his intent that governs. It is the joint intent of himself and his grantees, and as between him and each of his grantees the *instrument or instruments between them—in this case, the deed*—constitute the final and exclusive memorial of such intent." True, these quotations are used in cases not entirely like the one in suit but they are valid, authoritative expressions to the effect that liberties cannot be taken with restrictive covenants in land deeds. If it may be conceded, and it is not, that the restrictions in the Rairden deed and those following it constitute equitable easements it is clear that those written in the Board of Directors' resolution do not measure up

to the requirements that they are such. There is no final expression in the deeds creating the restrictions contained in the resolution, and no final expression in the deeds authorizing changes of those actually written in the deeds if indeed such expression would create equitable easements. The restrictions in the resolution do not in any sense "come clearly within the terms" of the Rairden deed. There is no "final and exclusive memorial of the intention and rights of the parties" that the Rairden deed restrictions may be changed or modified or annulled through a public meeting of property owners advising the corporate Board of Directors to pass a resolution making the change. There is nothing whatever to show that there was a "definite and clear" understanding of the parties that such liberty should ever be taken with the Rairden restrictions.

*Did plaintiff become bound by the changes in the restrictions by its purchase of the lot and the consequent acceptance of membership in the property owners corporation as by contract?*

In its opening brief defendant says: "The same factors which are cited above [facts of the case as revealed by the pleadings] argue for the existence of a contract, evidenced in writing, by which appellee [plaintiff] agreed to become bound by the reasonable actions of appellant-grantee property owners corporation. Appellee agreed, because appellee was *benefited* thereby. It accepted the added restriction thus imposed on it directly, apart from those restrictions in the deed, because such acceptance meant a favored position for itself in *'maintaining'* and *'preserving'* the value of its property in a beautiful and exclusive residential development." [Emphasis used in text.]

We know of no principle of law and defendant states none which would bind the purchaser of a lot as by contract with all other owners in a tract to abide by a reservation which was invalidly attempted to be placed upon the use of the land by a property owners' corporation. The statement that the lot purchasers agreed because they benefited is a perfect example of the magic act known as lifting one's self by his own boot straps. If the purchaser should choose

to hold the opinion that the lot is more valuable to him under the original restrictions it does not lie with defendant or with any proof that he may produce that he is wrong about it. Very possibly the Board of Directors of the corporation could have taken other steps which in its opinion would have tended to maintain and preserve the value of the property and such steps might actually do that so far as the market value is considered, but this would make no difference. The belief of the corporation as to the maintenance of the property value did not authorize the corporation to change deed restrictions.

It is not claimed that plaintiff knew of the special meeting of February 17, 1945, at which time it is alleged a full discussion took place, (although it alleges notices were sent out as to the proposed change of the basis of restrictions) or ever advocated or approved such change which was voted by the Board of Directors on the day last mentioned. (Whether any difference would result otherwise we do not decide.) We have already held that the Rairden deed did not authorize the Board of Directors of the property owners' corporation to change the restrictions. When plaintiff purchased its lot it agreed to no more in regard to restrictions than to abide by the Rairden deed restrictions. The attempted changes were wholly invalid and plaintiff was under no obligation to abide by them. In Farquharson v. Scoble, 1918, 38 Cal.App. 680, 177 P. 310, the court states that restrictive covenants when valid will be enforced but when such covenants are claimed they will be construed strictly against the person seeking their enforcement and when none is contemplated, covenants will not be created by the courts. In Berryman v. Hotel Savoy Company, 1911, 160 Cal. 559, 117 P. 677, 37 L.R.A.,N.S., 5, it is said that where no ambiguity appears from the face of the deed it was the court's duty to determine the intentions of the parties as expressed in the deed.

From what we have said it is apparent that the theory of unjust enrichment cannot be applicable to the facts of this case.

*Was the plaintiff bound by the change under any phase of the doctrine of estoppel?*

The question relating to estoppel and laches remains for consideration. In treating this point we do not think it useful to discuss the fine distinctions found in the authorities between "equitable estoppel", "estoppel by laches", "estoppel in pais", "laches" and "estoppel".[4] We shall confine our study of the problem to the appellant's allegation in its so-called amended cross-complaint: "That cross-defendant Metropolitan Finance Corporation of California, has at all times acquiesced in and accepted the actions of the Board of Directors as adopted on or about February 17, 1945, and did not offer opposition to this action of the Board of Directors of cross-complainant Corporation at that time or for three years subsequent thereto, and that said square footage restrictions have been in force as against the cross-defendant since February 17, 1945, and that on or about the 5th day of February, 1948, cross-defendant did request by letter an alteration of the present square footage restriction requirements, and did threaten suit and has at all times continued to threaten suit unless such request for such alteration was granted, which request has been denied by the Board of Directors. However, said plaintiff and cross-defendant did not heretofore bring suit, and has permitted other property owners to conform to said Resolution who would now be injured by plaintiff's and cross-defendant's action at this late date, and plaintiff's and cross-defendant's *laches should estop* it from being successful in this action at such a late time." [Emphasis ours]

That is, because the appellee held membership in appellant property owners' corporation and offered no opposition to the restriction change for a period of about three years, until it desired to erect a building on its lot, during which period other lot owners conformed to the restriction changes—appellee is estopped from denying that the restrictions as attempted to be changed constitute an equitable servitude upon its lot. We have seen that the changes voted by the corporate Board of Directors, though authorized upon the face of the Articles of Incorporation and By-Laws, were exactly contrary to the powers of the corporation as authorized by the deed. We have also seen that the mere membership in the corporation which voted the changes does not bind the member as by contract.

It has been said that a mere acquiescence where there is no duty to speak does not raise an estoppel. Was appellee-defendant under a duty to speak? We think not. We quote from Lux v. Haggin, 1886, 69 Cal. 255, at page 266, 4 P. 919, 10 P. 674, at page 676: "Here we cannot discover the elements of such an estoppel [estoppel in pais]. The defendant has acted with full knowledge of all the facts, and, as must be presumed, with full knowledge of the law controlling the rights of the parties. To constitute the estoppel the party claiming the benefit of it must be destitute of knowledge of his own legal rights, and of the means of acquiring such knowledge. (Citations.) To constitute such an estoppel it must also be shown that the person sought to be estopped has made an admission or done an act *with the intention* of influencing the conduct of another, or that he had reason to believe would influence his conduct, inconsistent with the evidence he proposes to give, or the title he proposes to set up; that the other party has acted upon, or been influenced by, such act or declaration; that the party so influenced will be prejudiced by allowing the truth of the admission to be disproved. (Citations.) In the case before us the fact relied upon as proving the estoppel is that plaintiffs had knowledge of the expensive canals and other works of defendant while they were in progress, and did not object to them. The bare fact that ditches, etc., were constructed with the knowledge of the plaintiffs, though at great expense, without objection by plaintiffs, is not sufficient to constitute [such] an estoppel."

4, Compare Bell v. Hudson, 1887, 73 Cal. 285, 287, 14 P. 791, 792, 2 Am.St.Rep. 791, where the court states: "It [laches] is not the same thing as equitable estoppel, although it has been termed a quasi estoppel * * *." A doctrine of "estoppel by laches" is sometimes referred to; see Porter v. Van Denburgh, 1940, 15 Cal.2d 173, 99 P.2d 265, 267.

In Stockman v. Riverside Land & Irr. Co., 1883, 64 Cal. 57, at page 59, 28 P. 116, at page 117, the court said: "We have been cited to no authority, and, know of none that holds, that the bare fact that the ditch was constructed with the knowledge of the plaintiffs and their grantors, and without objection on their part, though at heavy cost, is sufficient to operate an estoppel. 'There must be some degree of turpitude in the conduct of a party before a court of equity will estop him from the assertion of his title * * *.' (Citing Biddle Boggs v. Merced Mining Co., 14 Cal. [279], 368)." See Burr v. Maclay Rancho Water Co., 1911, 160 Cal. 268, 280, 116 P. 715. See also Verdugo Canon Water Co. v. Verdugo, 1908, 152 Cal. 655, 673–674, 93 P. 1021; Holzer v. Read, 1932, 216 Cal. 119, 124, 13 P.2d 697; Stevens v. Oakdale Irr. Dist., 1939, 13 Cal.2d 343, 353, 90 P.2d 58.

In our case mere acquiescence is relied upon by defendant. Its pleading shows affirmatively that anyone constructing a building on a lot in the tract had before him the full revelation as to the law that the changes were not in accord with the deeds issued to tract lot purchasers. There is no possible claim as to any turpitude on behalf of plaintiff.

Estoppel and laches, normally, are defenses. In the instant case which is one for the declaration of rights in a dispute between the parties, the lot owner is in the position, under the pleadings in this case as we construe them, of a plaintiff claiming the right to build under the deed restrictions while the owners' corporation is the defendant claiming the lot owner is estopped from making such claim. Where, as here, the defendant is responding to a declaratory action defensive matter should appear by allegation in its answer. The fact that it does not is of no moment under Rule 8(c) of the Federal Rules of Civil Procedure. We shall treat this incidental point more thoroughly hereinafter.

We conclude and hold that plaintiff in the declaratory action is not estopped from showing the illegality of the proposed restriction change. And the showing is conclusively made by the fact, open to anyone who reads, that the facts as alleged cannot work an estoppel against plaintiff.

*Was it reversible error for the trial court to proceed to judgment on the complaint and answer after the dismissal of the compulsory counterclaim (denominated a cross-complaint)?*

■ Looking through all of the pleadings we find but one ultimate issue. Is the restriction provided for by the corporate Board of Directors' resolution binding upon the owner of the lot in suit? When this question is answered an appropriate judgment protecting the rights of all parties to the litigation will follow as of course. If in the proceedings of the district court the one ultimate issue has been decided and correctly decided and the rights of the parties have been accordingly decreed, it is of no consequence, we think, that the decree of the court appears in the form of two separate judgments. The first decreed judgment was one of dismissal of the so-called cross-complaint filed by the property owners' corporation (appellant). Said pleading put in main issue exactly what the complaint tendered as the only issue, to-wit: *Is the corporate resolution effective as against the lot in suit as a legal consequence of the Rairden deed and the corporate act?* But this was not all. The cross-complaint (counter-claim) also put in issue: *Whether the resolution was effective even if the answer to the main issue should be in the negative.* In other words, the corporation says it acted within the Rairden deed and within the power conferred upon it by virtue of the Rairden deed when it passed its resolution. But if it did not, the owners' corporation asserts, the resolution is nevertheless effective because of what we shall term incidental issues:

(a) The facts show that the plaintiff bound itself by contract; and that plaintiff would be unjustly enriched if allowed to escape the effectiveness of the resolution;

(b) The facts show that the plaintiff is estopped from denying the effectiveness of the resolution through its delay in objecting to it, which has created an estoppel by laches.

We have already held that the alleged facts do not support the corporation in any of these incidental issues. All that remains is the main issue. When the court caused its judgment of dismissal of the "cross-complaint" to be entered, it was deciding that that pleading did not present a cause for which relief could be given. We cannot assume that the trial judge was oblivious to the rule that cross-complaints are no longer recognized in federal pleadings. We can only assume that the "cross-complaint" was at all times regarded as a counterclaim. Counterclaims alleging situations which if well proven would prevent recovery by plaintiff are essentially parts of the defendant's answer to the claim of plaintiff. Therefore when the court concluded that no relief could be granted upon the mis-called pleading it was finding that the facts set up as the basis for what we have called the incidental issues, as though they had been pleaded in the answer, were not supported by the basic admitted facts. Compare Rule 41(b) of the Federal Rules of Civil Procedure.

Consistent with what we have said, the court did not consider that it had ruled upon the question sought to be presented by the complaint and virtually but improperly repeated in the "cross-complaint" (counterclaim). It then went forward in the second or summary judgment and adjudicated the issue presented by the complaint. The result, as we see it, is that by the dismissal in the form of the first "judgment", it found the "incidental issues" as found in the mislabeled counterclaim not to allege facts which could constitute defenses to plaintiff's claim. And by the summary judgment it found that the property owners' corporation had no legal right to modify, change, eliminate, or add to the use restrictions contained in the Rairden deed. All of the briefs in the case show that the attorneys handling the case assumed that all of the issues presented or attempted to be presented by the pleadings were before the trial court.

■ There is one more phase of this appeal yet to be considered. Appellant owners' corporation claims that it was error for the trial court to dismiss its "cross-complaint" because it could have supplemented

the allegations by testimony. We do not agree with appellant. All such testimony receivable as support for defendant's claim that the resolution was binding upon plaintiff would have been in support of the ultimate facts alleged. The court's ruling was, that assuming such allegations to be well proved, yet they could not make the corporate resolution effective. The defendant-appellant's claim that the court's action in deciding the main issue by summary judgment is likewise without merit. The Rairden deed, the corporate Articles of Incorporation and By-Laws and the text of the corporate Board of Directors' resolution, and the manner in which the resolution was adopted, were all before the court. No amount of testimony could affect the legal conclusion to be drawn therefrom. The issue therefore was one of law for the court to draw. In such circumstances the summary judgment was proper. Sartor v. Arkansas National Gas Corp., 1944, 321 U. S. 620, 64 S.Ct. 724, 88 L.Ed. 967; Lane Bryant, Inc., v. Maternity Lane, Ltd., of California, 9 Cir., 1949, 173 F.2d 559.

Since the court's decision appears complete in two instruments, each termed judgments, our order is that both be

Affirmed.