**PABELLON v. GRACE LINE, Inc. (COSTON SUPPLY CO. et al., third- and fourth-party defendants).**

**No. 264, Docket 22000.**

United States Court of Appeals Second Circuit.

Argued June 5, 1951.

Decided July 26, 1951.

Writ of Certiorari Denied Dec. 3, 1951.

See 72 S.Ct. 201.

---

James B. Magnor, New York City (Kirlin, Campbell & Keating and Vernon S. Jones, New York City, on the brief), for third-party plaintiff-appellant, Grace Line, Inc.

Vincent A. Catoggio, New York City (Mitchell, Capron, Marsh, Angulo & Cooney and Earle J. Starkey, New York City, on the brief), for third-party defendant-appellee Coston Supply Co.

Paul M. Klein, New York City (Tashof & Sobler and Martin A. Rothenberg, New York City, on the brief), for third-party defendant-appellee Rudman & Scofield, Inc.

Wilbur M. Jones, New York City (John W. Trapp, New York City, on the brief), for third-party defendant-appellee Dearborn Chemical Co.

John W. Burke, Jr., New York City (Davies, Hardy, Schenck & Soons, New York City, on the brief), for third-party defendant-appellee Oakite Co.

David Hartfield, Jr., New York City (White & Case, Lowell Wadmond, and Donald Cronson, New York City, on the brief), for third-party defendant-appellant Swift & Co.

I. Arnold Ross, New York City (Arthur C. Kellman, New York City, on the brief), for fourth-party defendant-appellee McKesson & Robbins, Inc.

Walter E. Warner, Jr., New York City (Chambers, Clare & Gibson, New York City, on the brief), for fourth-party defendant-appellee Oldbury Electro-Chemical Co.

Before CHASE, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

In its initial stage this was an action for damages and maintenance and cure by a seaman injured through the alleged negligence of the original defendant while working upon the latter's merchant vessel, Santa Isabel. The immediate cause of the injury was alleged to be "a violent and explosive disintegration of some of the appurtenances and appliances upon which, and with which, plaintiff was then and there working," which resulted in the striking of plaintiff's body with fragments of the appurtenances and a severe and extensive burning of it thereby also occurring. As the trial judge explained, "An examination of the plaintiff elicited that the explosion had occurred after he had mixed together a quantity of caustic soda or lye, sold under the name of 'Dearborn Cleaner No. 7,' used for cleaning drains, 'Pride' washing powder, a quantity of oxalic acid, and a quantity of cleanser under the brand name of 'Oakite.'" 94 F.Supp. at page 990. The defendant shipowner thereupon brought amended third-party complaints against six third-party defendants, including the suppliers to it of these cleansers and detergents and their manufacturers. In this complaint it stated three claims for relief:

the first for breach of warranty against the suppliers; the second for negligence against all; and the third for contribution from all as joint tort-feasors with it. One of the suppliers, Rudman & Scofield, Inc., in turn brought a fourth-party complaint against its supplier and the manufacturer, McKesson & Robbins Incorporated and Oldbury Electro-Chemical Co. Then Grace Line, Inc., the original defendant, moved to dismiss the complaint against it, and the various other defendants moved for dismissal of the complaints against them, in each case for failure to state claims on which relief can be granted. The court refused to dismiss the original complaint, but did grant the other motions dismissing the third- and fourth-party complaints, D.C.S.D.N.Y., 94 F.Supp. 989, and Grace Line, Inc., and Rudman & Scofield, Inc., both appeal.

Grace Line has not appealed from the court's refusal to dismiss the original complaint, and that stands. In so refusing the court said: "In the first claim the plaintiff alleges the unseaworthiness of defendant's vessel and defendant's negligence. Whether liability may be imposed upon defendant depends upon the circumstances under which the explosion occurred such as instruction, custom in mixing certain cleaning products and the like." 94 F.Supp. at page 990. But when it came to consider the claims over against the third-party defendants it took the view in substance that an explosion of such unusual character as was claimed could not have been reasonably foreseen by the defendant manufacturers and suppliers and that there was no basis for claims of warranty or negligence. It added that this made unnecessary consideration of the third claim for contribution, although its judgment dismisses all claims.

In thus dismissing the complaints over on the face of the pleadings, we think the court has committed the not unusual error of attempting to make haste too rapidly by dispensing with a trial in advance of knowledge of what might develop there. Viewed as a pleading under the liberal Federal Rules, 28 U.S.C.A., the amended third-party complaint now before us seems to us fully adequate. Hickman v. Taylor, 329 U.S. 495, 501, 67 S.Ct. 385, 91 L.Ed. 451; Dioguardi v. Durning, 2 Cir., 139 F.2d 774, 775. Indeed, it sets forth quite fully and frankly the situation in which the Grace Line finds itself by reason of the claim made against it by the plaintiff and its view that if it is to be held liable it has a proper claim for indemnity or at least contribution from those who put in its hands these instrumentalities which eventually proved dangerous in combination. Had it said more, it would have had to make allegations by guess; had it said less, we might have found no ground whatsoever for recovery. But as it stands we cannot say that there is no legal basis in any event for a claim of liability. Hence dismissal of the third-party complaint at this early stage of the case was not justified.

Upon the allegations before us, there would appear to be at least a possibility of liability against the suppliers for breach of warranty and against all the defendants for negligence as alleged. True, one naturally tends to view with some skepticism so unusual an accident, as well as the extensive claims made as to it. Nevertheless, such a case as Pease v. Sinclair Refining Co., 2 Cir., 104 F.2d 183, 123 A.L.R. 933, shows that the unusual may happen by way of accident and that liability may be properly assessed against a defendant manufacturer. This case, cited by Grace Line, is support, particularly for the second claim based on negligence and foreseeability, although the district court refused to accept any analogy, saying that "there the basis of the wrong was mislabeling." But this seems hardly adequate. There a chemistry teacher had obtained from the defendant oil company the latter's exhibit of petroleum products for demonstration purposes. Included among these was a sample bottle marked "kerosene," although it actually contained water for supposed safety in handling. Thinking it kerosene, a preservative of sodium, the teacher poured the contents of the bottle on sodium, causing an explosion and resultant grievous injury to him. We held that the case was properly submitted to the jury on the issue of negligence and

foreseeability of harm, and sustained a plaintiff's verdict. The defendant manufacturers say that they cannot be held for any but latent or hidden defects in the absence of any privity of contract with Grace Line; but the exceptions stated would seem applicable here if any defects existed at all. MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A. 1916F, 696; Campo v. Scofield, 301 N.Y. 468, 95 N.E.2d 802; McSpedon v. Kunz, 271 N.Y. 131, 2 N.E.2d 513, 105 A.L.R. 1497; Schuylerville Wall Paper Co. v. American Mfg. Co., 272 App.Div. 856, 70 N.Y.S.2d 166; Baxter v. Ford Motor Co., 168 Wash. 456, 12 P.2d 409, 15 P.2d 1118, 88 A.L.R. 521, with annotation at 527.

■ Dismissal of the first claim, founded upon breach of warranty, appears to have been based on a misconception of law. The court held that this claim was rendered "completely insufficient" by the provision of the Sales Act, N.Y.Personal Property Law, McKinney's Consol.Laws, c. 41, § 96, subd. 4, that in the case of a sale "of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose." But this is to overlook the settled construction of the statute to the effect, first, that the mere fact that the article happens to have a trade name does not, *per se,* bring the sale within its provision and, second, that even if it does the section does not necessarily exclude the warranty contained in the second subdivision. Foley v. Liggett & Myers Tobacco Co., 136 Misc. 468, 241 N.Y.S. 233, 238, affirmed 232 App. Div. 822, 249 N.Y.S. 924. See also Bencoe Exporting & Importing Co. v. McGraw Tire & Rubber Co., 212 App.Div. 136, 208

N.Y.S. 4; Sachter v. Gulf Refining Co., Sup.App.T., 203 N.Y.S. 769; Ganoung v. Daniel Reeves, Inc., 149 Misc. 515, 268 N.Y.S. 325; Ryan v. Progressive Grocery Stores, 255 N.Y. 388, 175 N.E. 105, 74 A.L.R. 339, with annotation at 343; Botti v. Venice Grocery Co., 309 Mass. 450, 35 N.E.2d 491, 135 A.L.R. 1387, with annotation at 1393; Deffebach v. Lansburgh & Bro., 80 U.S.App.D.C. 185, 150 F.2d 591, 168 A.L.R. 1052, with annotation at 1054, certiorari denied Lansburgh & Bro. v. Deffebach, 326 U.S. 772, 66 S.Ct. 177, 90 L.Ed. 466.

There is good reason for this principle of law, since a mere purchase under a trade name does not prove that the purchaser is not relying at all on the skill and judgment of the seller or on the justified belief that the article will perform a particular function. A cleaner is, after all, generally expected to be a cleaner, whatever its fancy name. Compare L. Hand, J., in McNeil & Higgins Co. v. Czarnikow-Rienda Co., D.C.S.D.N.Y., 274 F. 397, 399, that "presumably the brand means some uniform quality, which has made it known and desired. The buyer exacts it because he expects the delivery to have that quality. The seller knows of the buyer's expectations, and he is in a position to know whether the delivery conforms with those expectations." It is in view of this that the draftsmen of the proposed new Uniform Commercial Code have eliminated a formal statement of this exception as "the major extension of the warranty of fitness *which has been made by the cases* and continued in this Article." (Emphasis added.) Uniform Commercial Code, Proposed Final Draft, Spring 1950, § 2–315, comment 5, p. 116.[1]

1. The comment goes on to explain that under the provision, retained in the new Code, of implied warranty of fitness of the goods for the purpose required where the seller has reason to know of that purpose and that the buyer is relying on his skill or judgment to select or furnish suitable goods, the name or designation is only one of the facts, and not of itself decisive, to be considered on the question of the buyer's actual reliance on the seller. "If the buyer himself is insisting on a particular brand he is not relying on the seller's skill and judgment and so no warranty results. But the mere fact that the article purchased has a particular patent or trade name is not sufficient to indicate nonreliance if the article has been recommended by the seller as adequate for the buyer's purposes." Uniform Commercial Code, Proposed Final Draft, Spring 1950, § 2–315, comment 5.

Since, as we hold, the first two claims are good we need not consider at this time the third claim for contribution among joint tort-feasors which the district court did not examine. Upon remand of the action, the district court should have free authority to consider such issues or allow such amendments as it thinks conducive to justice in the trial of the litigation. While the basis for holding that all these defendants are joint tort-feasors may not seem immediately apparent, no definitive conclusion is now appropriate.

The district court also dismissed the fourth-party complaint of the supplier Rudman & Scofield against its supplier and manufacturer. These defendants contend that in any event this complaint does not allege negligence or breach of warranty against them and is not justifiable in law. While the claims are obviously still more remote we think there is no basis at this time in holding them legally impossible. From the standpoint of pleading, the fourth-party plaintiff has stated its allegations alternatively and contingently on the basis that if it is held responsible over to the Grace Line then such liability is entirely upon the fourth-party defendants. True, before recovery this plaintiff must show either breach of warranty or negligence of a foreseeable nature. Nevertheless alternative or hypothetical pleadings are permissible, Fed.Rules Civ.Proc. rule 8(e)(2), 28 U.S.C.A.; and we read this complaint to make the required allegations, albeit hypothetically. In case of any real lack of clarity the district court has of course power to order an amendment.

Appeal here is taken upon the basis of an express provision of the district court's order "that in accordance with rule 54(b), of the Federal Rules of Civil Procedure, it is hereby determined that there is no just reason for delay and the entry of judgment is accordingly directed." While no party has raised any question as to the appealability of the order, it has been discussed among ourselves, since we must be sure of our own jurisdiction before we act. There is now a considerable body of authority, in this circuit and elsewhere, upholding and applying the provisions of the amended F.R. 54(b), which the trial court here followed. The more usual situation is the converse of that before us, namely, a judgment still intentionally interlocutory for lack of such a determination and direction. While occasionally it has been pointed out that in point of fact the judgment would have been appealable without the additional provision before the effective date of the amendment, Lyman v. Remington Rand, Inc., 2 Cir., 188 F.2d 306; Republic of China v. American Express Co., 2 Cir., 190 F.2d 334, yet in other cases no discussion is had under circumstances suggesting that the court did not consider this a requisite. See, e. g., Flegenheimer v. Manitoba Sugar Co., 2 Cir., 182 F.2d 742; Tobin Packing Co. v. North American Car Corp., 2 Cir., 188 F.2d 158; Etten v. Kauffman, 3 Cir., 179 F.2d 302; Felder v. D. Loughran Co., D.C.Cir., 188 F.2d 623. Professor Moore, who was active in the drafting of the amended rule, states definitely that it is within the district judge's power to make certain orders final that would not have been final under the original rule. Moore's Commentary on the U.S.Judicial Code 517, 1949. This also appears to be the import of Lockwood v. Hercules Powder Co., 8 Cir., 172 F.2d 775; Kuly v. White Motor Co., 6 Cir., 174 F.2d 742, 744; Prickett v. Consolidated Liquidating Corp., 9 Cir., 180 F.2d 8, 9, n. 3; and Kam Koon Wan v. E. E. Black, Ltd., 9 Cir., 182 F.2d 146, where the formula of the rule was stated to be adequate even with respect to certain judgments formerly either not or only doubtfully appealable. Cf. Garbose v. George A. Giles Co., 1 Cir., 183 F.2d 513, where the court, per Frank, J., found it unnecessary to pass upon the issue because of lack of an adequate order by the trial judge.[2]

2. There appear to have been only two other references to the situation here presented. One is by Judge Frank in Clark v. Taylor, 2 Cir., 163 F.2d 940, 952, n. 12, where he concludes with the suggestion that "the Rule is intended to make decisive the district judge's determination of finality only if the right of appeal would have been doubtful before the Rule went into operation." The other is by

The possibility of some expansion or at least expansive clarification of the rule of appealability is of course quite in keeping with the experience under original F.R. 54(b). That provided for the so-called split judgment, or final judgment upon the adjudication of one of the several joined claims which the new practice permitted and encouraged. This led to a wider lawsuit and to more separate judgments than was the practice before the new procedure, but in the many applications of the rules (sometimes unfortunately diverse because of the ambiguity of the subject matter) there appears never to have been raised any question of the validity of the rule itself in its application to multiple claims and it was upheld and applied by the Supreme Court in Reeves v. Beardall, 316 U.S. 283, 62 S.Ct. 1085, 86 L.Ed. 1478.[3]

Before we consider the application of the amended rule to the case before us, we should have in mind just what it purports to do, since some district judges have apparently interpreted it as giving them unlimited power to make any order appealable.[4] But an examination of the rule, as well as of its background, will demonstrate that this is an unwarranted extension. The rule is entitled "Judgment Upon Multiple Claims"; it begins, "When more than one claim for relief is presented in an action," and then goes on to provide that the court may direct "the entry of a final judgment" upon one or more of the multiple claims only upon the two requirements, *viz.*, "an express determination that there is no just reason for delay" and "an express direction for the entry of judgment"; and it concludes that without such determination and direction an order adjudicating less than all the claims shall not terminate the action as to any, but shall be subject to revision at any time "before the entry of judgment adjudicating all the claims." It is therefore limited, like the rule it succeeded, to the case of multiple claims.[5] When we recall the well-known use of the word "claim" in the Federal Rules in place of the old and confusing "cause of action" and the emphasis upon facts, not legal rights, as the basis of claim,[6] we see that the new rule is no authority for holding final a district court order which does not adjudicate even a single "claim." It operates only when there are in the action *multiple claims of which at least one has been adjudicated.*[7] Then, and only then, is resort had to the formula of the rule to

the writer of this opinion in Lo Bue v. United States, 2 Cir., 178 F.2d 528, 531, n. 1, referring to the "obvious power" of a district judge to hold his rulings as interlocutory until he chooses to make them final, adding that the new rule "does no more than hold this to be his purpose unless he makes clear and precise his contrary intent," and concluding that the "only possible question as to validity" would be limited to an attempt—probably unlikely in fact—of a district judge to make final a clearly interlocutory order, such as permission to amend a pleading. In the light of the later discussion herein I would now substitute the word "construction" for "validity." The remainder of the observation is now an approved rationale for the rule. Republic of China v. American Express Co., 2 Cir., 190 F. 2d 334.

3. See also cases cited in the Advisory Committee's Note to amended Rule 54 (b) and Moore's Commentary on the U. S.Judicial Code 512–515, 1949; cf. id. 517 that the Supreme Court "has the power by rule, which has the force of

statute, to define finality for a limited situation—where an action involves multiple claims."

4. Cf. Lapin v. La Maur, Inc., D.C.Minn., 11 F.R.D. 339; Ace Grain Co. v. American Eagle Fire Ins. Co., D.C.S.D.N.Y., 11 F.R.D. 164.

5. "Like its predecessor it deals with finality as related to only one situation, albeit an important and extensive one: the situation where the action embraces multiple claims." Moore's Commentary on the U.S.Judicial Code 515, 1949.

6. See, e.g., F.R. 8(a), 10(b); Reeves v. Beardall, 316 U.S. 283, 285, 62 S.Ct. 1085, 86 L.Ed. 1478; Original Ballet Russe v. Ballet Theatre, 2 Cir., 133 F.2d 187, 189; Petrol Corp. v. Petroleum Heat & Power Co., 2 Cir., 162 F.2d 327, 329.

7. Compare Canister Co. v. National Can Corp., 3 Cir., 163 F.2d 683; Petrol Corp. v. Petroleum Heat & Power Co., 2 Cir., 162 F.2d 327; Western Contracting Corp. v. National Surety Corp., 4 Cir., 163 F.2d 456; Moore's Commentary

determine whether the judge intends his ruling upon part of the claims to be final as to them or only interlocutory. As applied to the one situation of multiple claims, it would seem, therefore, that the rule is to be given operation according to its clear intent to provide a uniform and easily understood method and to avoid the former confusion of conflicting precedents. Dickinson v. Petroleum Conversion Corp., 338 U.S. 507, 512, 70 S.Ct. 322, 94 L.Ed. 299.[8]

Our present task here is, however, simplified, since there has been no doubt on the authorities of the appealability of a final judgment on an impleaded claim. This Judge Fahy has just pointed out in a perspicacious opinion in David v. District of Columbia, D.C.Cir., 187 F.2d 204, where he refers to the former rule allowing appeals and applies the present requirement of the specified action by the trial judge.[9] Among other cases he cites New Orleans Public Belt R. Co. v. Wallace, 5 Cir., 173 F.2d 145, applying the principle to a cross-claim, and Winsor v. Daumit, 7 Cir., 179 F.2d 475, refusing to hear a counterclaim, later heard after appropriate judgment in 7 Cir., 185 F.2d 41. And he might have cited our own case of Slattery v. Marra Bros., dismissed May 1, 1950, as pointed out in D.C.S.D.N.Y., 92 F.Supp. 534, at page 536, and finally heard on the merits, 2 Cir., 186 F.2d 134.

Appealability of impleader decisions on the merits under the former F.R. 54(b) appears from numerous cases, e. g., Brown v. Cranston, 2 Cir., 132 F.2d 631, 148 A.L.R. 1178, affirming 2 F.R.D. 270, certiorari denied Cranston v. Thompson, 319 U.S. 741, 63 S.Ct. 1028, 87 L.Ed. 1698; City of Philadelphia, to Use of Warner Co. v. National Surety Corp., 3 Cir., 140 F.2d 805; Sporia v. Pennsylvania Greyhound Lines, 3 Cir., 143 F.2d 105; Sheppard v. Atlantic States Gas Co. of Pa., 3 Cir., 167 F.2d 841; Akers Motor Lines v. Newman, 5 Cir., 168 F.2d 1012, certiorari denied 335 U.S. 858, 69 S.Ct. 131, 93 L.Ed. 405; Capital Transit Co. v. United States, 87 U.S.App.D.C. 72, 183 F.2d 825, reversed on merits 340 U.S. 543, 71 S.Ct. 399; Northwestern Nat. Ins. Co. v. Samuel R. Rosoff, Ltd., Md., 73 A.2d 461, 465. It was so stated originally in 1 Moore's Federal Practice 748, 1st Ed. 1938; the later edition, 3 Moore's Federal Practice 449, 2d Ed. 1948, now points out the present necessity of securing the judge's order under the amended rule.[10] This principle had, too, its fair analogy in the well-settled rule that appeal would lie from the separate adjudication of a permissive—though not a compulsory—counterclaim. Libbey-Owens-Ford Glass Co. v. Sylvania Industrial Corp., 2 Cir., 154 F.2d 814, 816, 818, certiorari denied 328 U.S. 859, 66 S.Ct. 1353, 90 L.Ed. 1630; Nachtman v. Crucible Steel Co. of America, 3 Cir., 165 F.2d 997; Huntington Palisades Property Owners Corp., v. Metropolitan Finance Corp. of

on the U.S.Judicial Code 512, n. 110, 1949.

8. See also Moore as quoted in note 3 supra.

9. Judge Fahy was troubled (though happily not to the point of decision) by the statement in the Advisory Committee's Note to amended Rule 54(b) that "it concluded that a retention of the older federal rule was desirable"; this he read as a reference to original Rule 54(b). 187 F.2d at page 206. Actually the Committee was referring to what it terms at the outset of the note "the historic rule in the federal courts" prohibiting "piecemeal disposal of litigation" and later speaks of as "the settled federal rule stated above." A better choice of words would have been "the older (or original) federal principle." See Moore's Commentary on the U.S.Judicial Code 510, 511, 517, 1949; Schiel v. New York Life Ins. Co., 9 Cir., 178 F.2d 729, 730, certiorari denied New York Life Ins. Co. v. Schiel, 339 U.S. 931, 70 S.Ct. 668, 94 L.Ed. 1351.

10. As Professor Moore points out, loc. cit., this principle applies to a judgment adjudicating the impleaded claim; appealability would not exist as to an order refusing to dismiss a third-party claim, Carlisle v. S. C. Loveland Co., 3 Cir., 175 F.2d 418, or refusing a defendant permission to implead another, Baltimore & O. R. Co. v. United Fuel Gas Co., 4 Cir., 154 F.2d 545; cf. County Bank, Greenwood, S. C. v. First Nat. Bank of Atlanta, 4 Cir., 184 F.2d 152.

California, 9 Cir., 180 F.2d 132, certiorari denied 339 U.S. 980, 70 S.Ct. 1027, 94 L.Ed. 1384.

■ Hence there is no doubt as to the appealability of the order under appeal and of our jurisdiction. The order is reversed and the action is remanded for further proceedings consistent with this opinion.

FRANK, Circuit Judge (concurring).

1. I agree that, in the light of Reeves v. Beardall, 1942, 316 U.S. 283, 62 S.Ct. 1085, 86 L.Ed. 1478, the order here, dismissing the third-party and fourth-party complaints filed by the several defendants, is so independent of any subsequent final order as to plaintiff's complaint that the order would have been final, and therefore appealable, before the amendment of Rule 54(b) in 1948. I agree, too, that that amended Rule applies exclusively to cases where there are multiple claims. I also agree that the Rule has this effect: If, in a multiple-claims case, the trial judge fails to enter a "determination" of the kind described in the Rule,[1] then, although otherwise the order would have been final and appealable under 28 U.S.C.A. § 1291, it is interlocutory and not appealable.[1a] For, as we said very recently in Republic of China v. American Express Company, 2 Cir., 190 F.2d 334 under the Rule the trial judge's silence is the equivalent of his express reservation of power to change the order at any time before the case ends, and such an express reservation had always kept an order interlocutory. We explicitly stated that the "only effect" of the Rule was to equate such silence with an express reservation. Thus interpreted, the Rule does not alter the statutory jurisdiction of the appellate courts fixed by 28 U.S.C.A. §§ 1291 and 1292.

Such an interpretation of the Rule is in line with the Supreme Court's remarks about it in Dickinson v. Petroleum Conversion Corp., 338 U.S. 507, 70 S.Ct. 322, 94 L.Ed. 299. There the Court, holding final an order entered before the Rule was amended, referred 338 U.S. at pages 515–516, 70 S.Ct. at page 325, to the fact that the trial judge had said nothing to show that he intended to reserve power to change the order. The Court remarked, 338 U.S. at page 512, 70 S.Ct. at page 324, that probably amended Rule 54(b), if in effect, would have resulted in a contrary decision. So I think it would: the judge's silence would have made the order interlocutory. But the Court did not even intimate that the amended Rule was designed to do more than to allow the trial judge, by omitting a "determination," to keep interlocutory an order which otherwise would be final.

2. This court has no jurisdiction of appeals (except as to the few permitted by 28 U.S.C.A. § 1292, not here applicable) other than that created by § 1291, which provides: "The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts * * *." Consequently, I do not agree with Judge Clark's dictum that amended Rule 54(b) may be interpreted to authorize a trial judge, by making a "determination," to render final and appealable an order which, absent that Rule, would have been interlocutory and not appealable under § 1291. For if that Rule were so interpreted, then I think it would be invalid, as beyond the statutory power of the Supreme Court. If I am correct, then, obviously, the Rule should not be thus construed.

The Supreme Court has said that the 1934 statute, which empowered it to pro-

---

1. I use "determination," for convenience, to include the trial judge's "express determination that there is no just reason for delay" and his "express direction for the entry of judgment."

1a. See Moore, Commentary On The Judicial Code (1949) 518, as to the possible use of mandamus when the trial judge's failure to make a "determination" is obviously irrational.

Perhaps mandamus would be proper where, in a multiple-claim case, the trial judge dismissed an intervention when intervention was a matter of right, but failed to enter a "determination." Perhaps, however, such an order may be regarded as final and "collateral," within the doctrine of Forgay v. Conrad, 6 How. 201, 12 L.Ed. 404, and Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528, and therefore not covered by Rule 54(b).

mulgate procedural rules for "the district courts"[1b] gave it no authority to affect the jurisdiction of any of the courts. In Sibbach v. Wilson & Co., 312 U.S. 1, 10, 61 S.Ct. 422, 425, 85 L.Ed. 479, the Court, citing and construing this very Rules-statute, referred to "the inability of a court, by rule, to extend or restrict the jurisdiction conferred by a statute." In support of this statement, the court cited several cases. In one of those cases, Hudson v. Parker, 156 U.S. 277, 284, 15 S.Ct. 450, 453, 39 L.Ed. 424, the Court said: "This court cannot, indeed, by rule, enlarge or restrict its own inherent jurisdiction and powers, or those of the other courts of the United States * * *." Also cited in the Sibbach case is Davidson Bros. Marble Co. v. United States ex rel. Gibson, 213 U.S. 10, 18, 29 S.Ct. 324, 327, 53 L.Ed. 675, where it was said: "The rule substantially impairs his right to appeal to this court,—a right which is conferred by statute." In United States v. Sherwood, 312 U.S. 584, 589–590, 61 S.Ct. 767, 771, 85 L.Ed. 1058, the Court said: "An authority conferred upon a court to make rules of procedure for the exercise of its jurisdiction is not an authority to enlarge that jurisdiction and the Act of June 19, 1934, 48 Stat. 1064, 28 U.S.C. § 723b, authorizing this Court to prescribe rules of procedure in civil actions gave it no authority to modify, abridge or enlarge the substantive rights of litigants or to enlarge or diminish the jurisdiction of federal courts." See also Washington-Southern Nav. Co. v. Baltimore & Philadelphia Steamboat Co., 263 U.S. 629, 635, 44 S.Ct. 220, 68 L.Ed. 480; Venner v. Great Northern Railway Co., 209 U.S. 24, 25, 34–35, 28 S.Ct. 328, 52 L.Ed. 666; Cf. Chase Watch Corp. v. Heins, 284 N.Y. 129, 134, 29 N.E.2d 646; Benton v. Institute of Posturology, 243 Wis. 514, 11 N.W.2d 133, 134; Hunteman v. New Orleans Public Service, Inc., 5 Cir., 119 F.2d 465, 466.

If the Rule did authorize a trial judge to convert an interlocutory order into a final order, the consequence would be this: If two different trial judges in two different but identical cases entered identical orders of a kind not appealable under § 1291, one of those orders would become appealable merely because the one trial judge, in his discretion, granted an appeal, while the other identical order would remain unappealable merely because the other trial judge, in his discretion, chose not to allow an appeal. Surely, if, under the Rule, appealability of an otherwise interlocutory order turns entirely on the individual trial judge's willingness to say that delay is or is not just, etc., then the Rule strikingly affects appellate jurisdiction by authorizing trial judges to play on it like an accordion.

Moore, shortly after the adoption of the Rules, showed that the Rules-statute conferred no power to affect appellate jurisdiction. He said:[2] "Rule 82 provides that the rules 'shall not be construed to extend or limit the jurisdiction of the district courts.' Since the Federal Rules were promulgated for the district courts, it was not technically proper to provide in Rule 82 that the rules should not extend or limit the appellate jurisdiction of the circuit courts of appeals or the Supreme Court. But it must be apparent that the same policy which prompted Rule 82 demands that appellate jurisdiction as established by acts of Congress be not affected. This is further borne out by the evolution of Rule 54(b). Rule 63(b) of the May, 1936 Draft [counterpart of Federal Rule 54(b)] provided: '(b) Judgment in Favor of and Against Various Parties and at Various Stages. A judgment or final order may be entered by the court upon any issue or issues determined in favor of or against any party or parties at any stage of an action, and the action may proceed as to the remaining issues or parties as justice may require. A judgment or order entered pursuant to this rule shall be final for all purposes, including the right to appeal therefrom.' The danger of that rule was that appellate jurisdiction was probably materially enlarged. Thus

---

1b. 48 Stat. 1064 (1934), formerly 28 U. S.C. § 723b, now 28 U.S.C.A. § 2072.

2. 3 Moore, Federal Practice (1938) 3155–3157.

assume that A sued X and X put A's case in issue and also pleaded an affirmative defense, such as the statute of limitations. It may be highly desirable for the court to dispose of the affirmative defense before proceeding with what may be an involved trial on the other issues. But if the court entered a judgment on the issues raised by the affirmative defense, and the rule quoted might easily be construed to give it such power, the time for appeal would begin to run, and if an appeal were taken, the appellate jurisdiction would be enlarged. Furthermore, under that rule if A sued X and X pleaded a counterclaim, compulsory in character because it arose out of the transaction or occurrence sued on, and either the claim or the counterclaim was disposed of separately, the rule was open to the construction that separate judgments could be entered. Thus the time for appeal would begin to run upon each judgment as entered, and again appellate jurisdiction would be enlarged. Subdivision (b) was, therefore, re-drafted in the April, 1937 Draft as it now stands." Here Moore was writing of Rule 54(b) before its more recent amendment in 1948. After referring to Rule 42(b), he continued: "The function of Rule 54(b) is to complement that rule in such a manner that the court is given broad power to enter separate judgments, but so restricted that appellate jurisdiction is not affected."

More recently, Moore, referring to the present Rule 54(b), has, in a few brief sentences somewhat shifted his position;[3] but it is difficult to reconcile his earlier and his more recent views. As I understand it, this is his recent position:

The Supreme Court has the power, often exercised, to interpret § 1291, and thereby to decide what orders are final under that statute. The Court may also validly interpret that statute by a Rule. This it has done in Rule 54(b) in respect of some orders where there are multiple claims. Therefore that Rule, insofar as it bears on appellate jurisdiction, is not invalid,

since it is nothing but a revised interpretation of § 1291, in a sort of judicially codified form.

I answer that argument as follows: I shall assume that the Court may, in a Rule, set forth its interpretation of "final" in § 1291, and in such a Rule may depart from earlier interpretations found in its decisions. But that is not at all what Rule 54(b) does, if it is construed as Moore and Judge Clark (in his dictum) construe it. For, so construed, the Rule does not embody a revised interpretation by the Supreme Court of "final" in § 1291; instead, according to Moore and Judge Clark, the Rule declares that any trial judge, by his mere fiat, may effectively pronounce final an order of a kind the Supreme Court, when interpreting § 1291, has held not final within the proper meaning of that section. If, then, the Clark-Moore construction of the Rule is adopted, the Supreme Court, in that Rule, has not interpreted § 1291 but disregarded it: the Court has ruled that an order is final, not because it has finality under § 1291 correctly interpreted, but simply and solely because a particular trial judge determines that it shall be treated as final—although another trial judge, on the same day in an adjacent courtroom, determines that an identical order shall be treated as not final. The Rule construed in this way shows up not as a judicially codified interpretation of § 1291 but as legislation amending that section to enlarge the jurisdiction of the upper courts at the discretion of the several trial judges. But we have seen that the Supreme Court has told us that an amendment of that jurisdictional statute by a Rule would be invalid.

Judge Clark, to be sure, apparently so construes the Rule that a trial judge could not, by his mere fiat, render appealable every kind of order which, absent the Rule, was not appealable;[4] Judge Clark reads the Rule as not permitting an appeal from an order which is too glaringly interlocutory.[4a] This limitation, I think, would still leave the Rule invalid, since it

---

3. Moore, Commentary on The Judicial Code (1949) 512–517.

4. Moore's position is similar.

4a. Because of the novelty of amended Rule 54(b), its meaning was, at first, not too

would still sanction appeals from all sorts of orders which, according to Supreme Court decisions interpreting § 1291, are not final.[5]

3. Because the Rules, under the existing statute, cannot do the needful, several years ago I suggested that there is pressing need, in the interest of justice, to amend the existing statutory provisions relative to appeals.[5a] For the existing provisions give rise to serious injustices—for example, such as these: (1) In a suit involving but two parties and no multiple claims, a litigant, believing an order interlocutory and not appealable, fails to appeal from it; when, however, the entire case is over, and he then appeals, the upper court tells him that the earlier order was appealable, and that, because he did not appeal from it in time, he is now bound by it, although it was erroneous.[6] (2) In a suit with several defendants charged jointly, the trial court, previous to trial, erroneously orders and dismisses the one solvent defendant. Being unable to appeal from that order, plaintiff must go through a long, expensive trial, lasting several months, in which he obtains a judgment that is worthless practically, before he can procure a reversal of the order dismissing the solvent defendant, and thus be able to try and to prove his case against that defendant.[7] I could give other illustrations showing that many fruitless, expensive, and time-consuming trials stem from the appeal statute.

The dark clouds which today envelop "finality" also add considerably to the burdens of federal appellate courts. This court spends a very considerable amount of effort, each term, deciding whether or not orders are appealable. Frequently we devote as much time to answering such a question as we would need to decide the appeal on the merits; often, in truth, we must actually consider all the issues involved in the merits in order to arrive at a conclusion that we cannot legitimately consider them. The preclusion of appeals from most interlocutory orders, designed as a labor-saving device, has become one "which causes more labor than it saves."[8]

Irked by an unjust delay, sometimes we resort to this device: We write an opin-

clear. As a consequence, various interpretations were suggested which, on more mature reflection, now appear untenable. Thus in Flegenheimer v. Manitoba Sugar Co. Ltd., 2 Cir., 182 F.2d 742, 743, this court indicated that, in a proper case, if the trial judge failed to make a "determination," the appeal court could perhaps make one of its own, and entertain the appeal. In Clark v. Taylor, 2 Cir., 163 F. 2d 940, 951, note 12, dissenting opinion, I mistakenly expressed (although tentatively) the view that perhaps the Rule was intended to allow the trial judge to render an order appealable when the right of appeal would have been doubtful before the Rule went into operation. As Judge Clark says, in note 2 of his opinion in the instant case, he has modified his views expressed in Lo Bue v. United States, 2 Cir., 178 F.2d 528, 531, note 1. Similarly, Judge Clark at one time interpreted original Rule 54(b) in a manner from which later he somewhat deviated; see discussion of his opinions in 3 Moore, Federal Practice, 1950 Supplement, § 54.-02. In Audi Vision, Inc., v. R. C. A. Mfg. Co., 2 Cir., 136 F.2d 621, 624, 147 A.L.R. 574, Judge Clark said that the "rules do not affect jurisdiction or deal with the powers of appellate courts."

5. Moreover, this interpretation would require the upper courts, in each case, to decide whether an order was or was not glaringly interlocutory.

If the Rule were interpreted as Judge Clark interprets it, the question of its validity could be raised: In Mississippi Pub. Corp. v. Murphree, 326 U.S. 438, 444, 66 S.Ct. 242, 246, 90 L.Ed. 185, the Supreme Court announced that "The fact that this Court promulgated the rules * * * does not foreclose consideration of their validity * * *." Cf. 26 Virginia L.Rev. (1940) 823–824.

5a. Zalkind v. Scheinman, 2 Cir., 139 F.2d 895, note 3b.

6. See, e.g., Crick, The Final Judgment as a Basis for Appeal, 41 Yale L.J. (1932) 539.

7. Cf. Audi Vision, Inc. v. R. C. A. Mfg. Co., 2 Cir., 136 F.2d 621, 626, note 3, concurring opinion, 147 A.L.R. 574; Hunteman v. New Orleans Public Service, Inc., 5 Cir., 119 F.2d 465, 466; Bank of Rondout v. Smith, 156 U.S. 330, 334 (second full paragraph), 15 S.Ct. 358, 39 L.Ed. 441.

8. Crick, The Final Judgment as a Basis for Appeal, 41 Yale L.J. (1932) 539.

ion saying we have no jurisdiction, but actually, although obliquely, stating how we would have decided the appeal if legitimately we could have entertained it.[9] To use such a device is tempting. But (although at least once I have acquiesced in its use) it now seems to me undeniably improper: Either we have power to decide a case on the merits or we do not; if not, then we ought not, *ultra vires,* obliquely express our views on the merits since, in doing so, we are giving a mere advisory opinion, forbidden by the Constitution. Moreover, the use of such a device means this: Litigants bold enough to ask us to hear appeals from non-appealable orders sometimes, in actual effect, receive decisions on the merits from us, while other litigants, mindful of the limitations on our appellate jurisdiction, do not. But the significance of our making such improper decisions is this: In rendering them, we recognize the injustices that stem from the existing appeal statute. Occasionally, application to us for a writ of mandamus suffices to allow us to dispose of an order which is unappealable.[10] But that method is seldom available.[11]

As the Supreme Court has said, there are two competing considerations vis a vis appealability, "the most important of which are the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other." [12] In large measure, the inability to reconcile satisfactorily these two considerations derives from the statutes on the subject of appeals.

In Zalkind v. Scheinman, 2 Cir., 139 F.2d 895, note 3b, with the concurrence of Judge Learned Hand, I suggested, as the way out of this judicial swamp, a new statute amending these statutes. Amplifying that suggestion,[13] I now venture to propose a statute (modelled somewhat on the Supreme Court certiorari statute) which will confer on each court of appeals the authority, in its discretion, to allow an appeal from any order that is not final, whenever delay resulting from denial of the appeal will work substantial injustice by way of markedly heavy expense or great waste of time and effort. Such discretionary appeals from interlocutory orders would be in addition to interlocutory appeals now allowed under 28 U.S.C.A. §

9. See, e.g., United States v. Braunstein, 2 Cir., 168 F.2d 749, 750; Audi Vision, Inc., v. R. C. A. Mfg. Co., 2 Cir., 136 F.2d 621, 626, 147 A.L.R. 574; cf. United States v. Isthmian Steamship Co., 2 Cir., 187 F.2d 662. I concurred in United States v. Braunstein, supra, but regret having done so.

10. See, e.g., Bereslavsky v. Caffey, 2 Cir., 161 F.2d 499; Bereslavsky v. Kloeb, 6 Cir., 162 F.2d 862; Ford Motor Co. v. Ryan, 2 Cir., 182 F.2d 329, 330; Ex parte Peterson, 253 U.S. 300, 305, 40 S.Ct. 543, 64 L.Ed. 919; Ex parte Republic of Peru, 318 U.S. 578, 63 S.Ct. 793, 87 L.Ed. 1014; Roche v. Evaporated Milk Association, 319 U.S. 21, 63 S.Ct. 938, 87 L.Ed. 1185; United States Alkali Export Association v. United States, 325 U.S. 196, 65 S.Ct. 1120, 89 L.Ed. 1554; Ex parte Fahey, 332 U.S. 258, 67 S.Ct. 1558, 91 L.Ed. 2041; Moore, Commentary On The Judicial Code (1949), 468–469, 509–510.

11. See, e. g., Ex parte Fahey, 332 U.S. 258, 67 S.Ct. 1558, 91 L.Ed. 2041; Bank Line v. United States, 2 Cir., 163 F.2d 133; Ward Baking Co. v. Holtzoff, 2 Cir., 164 F.2d 34.

12. Dickinson v. Petroleum Corp., 338 U.S. 507, 511, 70 S.Ct. 322, 324, 94 L.Ed. 299.
   Perhaps they can be stated as two doctrines both aiming to eliminate undesirable delays: "The first doctrine * * * in order to 'protect from delay the progress of the trial,' bars an appeal from an order, made in the course of a suit not yet concluded, when the appeal will lead to 'the piecemeal disposition of what for practical purposes is a single controversy,' and will result in 'separate reviews of the component elements in a unified cause.' The second doctrine * * * again in order to discourage delays, permits an immediate appeal from an order dismissing one of two distinct claims 'arising out of wholly separate and distinct transactions.'" Libbey-Owens-Ford Glass Co. v. Sylvania Industrial Corp., 2 Cir., 154 F.2d 814, 824–825, dissenting opinion.

13. See Clark v. Taylor, 2 Cir., 163 F.2d 940, 952, note 12, dissenting opinion; American Machine & Metals v. De Bothezat Impeller Co., 2 Cir., 173 F.2d 890, 893, dissenting opinion.
   See also 47 Mich.L.Rev. (1948) 233, 241.

1292. But all interlocutory appeals in bankruptcy (most of which are now as of right) would be made discretionary.

To avoid unfair entrapment of litigants, the new statute should provide that discretionary appeals are to be permissive, not mandatory, so that failure to take or seek an appeal from an interlocutory order will be no bar to an appeal when the order becomes final.[13a] Besides authorizing a party to seek an interlocutory discretionary appeal, it might be well to incorporate the suggestion of Moore and Vestal[14] that the trial judge be authorized, by a certificate, to "invoke the discretionary, not the obligatory, jurisdiction of the courts of appeals" as to all interlocutory orders not now appealable under 28 U.S.C.A. § 1292.

It seems to me that it would be most unwise to provide by statute (after the manner in which Judge Clark in his dictum interprets Rule 54(b) as to suits where there are multiple claims) that a trial judge, in his discretion, may make interlocutory orders appealable: (1) Such a provision (as observed above) would result in undesirable and unjust lack of uniformity. (2) Moreover, it might well flood the upper courts with frivolous appeals. (3) In addition, as the trial judge is far less likely than the upper court to perceive a probable error in his order, he may bar an interlocutory appeal when, in justice, there should be one.

The proposed new statute—leaving it wholly to the discretion of the appeal courts to allow interlocutory appeals, except those now allowed by 28 U.S.C.A. § 1292—is not open to the objection that it would inflict on the litigants in the federal courts the evils of the practice in the New York courts, where a host of interlocutory appeals are not subject to any court's discretion but are as of right. Indeed, the proposal, by bringing many ridiculous interlocutory appeals in bankruptcy within appellate discretion, would tend markedly to reduce the volume of federal appeals.

I advance these proposals in the belief that there is no impropriety in suggesting, in a judicial opinion, an amendment to a statute. Thus this court recently urged a statutory change to enlarge the powers of the F.B.I.[15]

13a. This is now true with respect to interlocutory orders appealable under 28 U.S.C.A. § 1292. Western States Mach. Co. v. S. S. Hepworth Co., 2 Cir., 152 F.2d 79, 80–81.

14. Cf. Moore and Vestal, Present and Potential Role of Certification in Federal Appellate Procedure, 35 Va.L.Rev. (1949) 1, 45.

15. United States v. Coplon, 2 Cir., 185 F. 2d 629, 640; see also United States v. Mook, 2 Cir., 125 F.2d 706; L. Hand, J., in Parke-Davis & Co. v. H. K. Mulford Co., C.C., 189 F. 95, 115; Cardozo, A Ministry of Justice, 35 Harv.L.Rev. (1921) 113.